(No. 66205.—

*In re* PETITION OF THE VILLAGE OF KILDEER TO ANNEX CERTAIN TERRITORY (The Village of Kildeer, Appellant, v. Robert Schwake *et al.*, Appellees).

*Opinion filed October 20, 1988.*

John M. Mullen, of Waukegan, for appellant.

James S. Gordon and Edward Slovick, of Chicago (Joseph N. Sikes, of Grayslake, of counsel), for appellees.

CHIEF JUSTICE MORAN delivered the opinion of the court:

In three separate proceedings in the circuit court of Lake County (86—MC—2, 86—MC—3, and 86—MC—4), the Village of Kildeer (Kildeer) petitioned to annex certain unincorporated territories pursuant to the annexation provisions of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—1 *et seq.*). The three petitions were assigned to three different circuit court judges. In March 1986, each circuit court judge approved the annexation ordinance pending before him and ordered a referendum for November 4, 1986. (Ill. Rev. Stat. 1985, ch. 24, pars. 7—1—4, 7—1—6.) In August 1986, the American National Bank as trustee, the Mount Prospect State Bank as trustee, and affected property owners (objectors) filed in each case a verified petition, together with supporting affidavits, to vacate the three

orders pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401). The petitions allege, *inter alia*, that Kildeer adopted invalid annexation ordinances and caused improper notice of each hearing to be published.

In each of the three proceedings, the circuit court granted objectors' petition to vacate. However, in 86—MC—3 and 86—MC—4, the circuit court held that Kildeer complied with the statutory notice requirements. Furthermore, in 86—MC—3, the circuit court did not allow Kildeer the opportunity to answer the motion to vacate. In 86—MC—2, the circuit court held that although Kildeer technically complied with the statutory notice requirement, notice was inadequate as to objectors because it was designed to circumvent the purpose of the statute.

Kildeer appealed all three of the decisions granting the petitions to vacate. Objectors cross-appealed the findings in 86—MC—3 and 86—MC—4 that Kildeer complied with the statutory notice requirement. The appellate court consolidated the three causes.

In 86—MC—4, the appellate court affirmed the petition to vacate and reversed the decision regarding notice. It held that although Kildeer technically complied with the statutory notice requirement, the notice was inadequate as to objectors. In 86—MC—2, the appellate court affirmed the decision in its entirety. In 86—MC—3, the appellate court reversed and remanded the case in order to allow Kildeer the opportunity to file an answer. The appellate court instructed the circuit court to conduct a new evidentiary hearing on the petition *only* if Kildeer's answer alleges facts controverting the central allegations of objectors' section 2—1401 petition. The appellate court did not rule on the cross-appeal in 86—MC—3 because it was not timely filed. (162 Ill. App. 3d 262.) We granted Kildeer's petition for leave to appeal (107 Ill. 2d R. 315).

The issues presented on review are: (1) whether an interested party can petition to vacate, pursuant to section 2—1401, a final order approving an annexation ordinance under section 7—1—4 of the Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—4); and (2) if so, whether the vacation of each of the final orders was a proper exercise of the circuit court's discretion.

The record reveals the following uncontroverted facts. Kildeer filed three petitions to annex certain unincorporated territories on February 26, 1986. The petitions had been initiated by three municipal ordinances. The petitions were thereafter assigned to separate circuit court judges. Each judge was unaware of the petitions pending before the other two judges. Kildeer then caused a separate notice to be published in the Chicago Sun-Times for each hearing. Notice was published on March 3, 1986, for 86—MC—4; March 6, 1986, for 86—MC—3; and March 7, 1986, for 86—MC—2. None of the objectors were aware of the notices and none appeared at the subsequent hearings. Consequently, on March 20, 24 and 25, 1986, in 86—MC—4, 86—MC—3 and 86—MC—2, respectively, each judge approved the ordinance pending before him and ordered a referendum for November 4, 1986.

The three ordinances, taken together, form a hollow, irregular rectangle and embrace certain properties which lie in an unincorporated area between the Village of Kildeer and the Village of Lake Zurich. The relevant properties are known as the "Schwake property," which totals approximately 117 acres; the "Grethe property," which totals approximately 60 acres; and the "Riley property," which totals approximately 12 acres. The three ordinances include portions of these properties, while the remaining portions of these properties fall inside and around the rectangle. In 86—MC—2, the property described in the ordinance is divided into six par-

cels: parcels 2 and 3 encompass a portion of the Schwake property, parcels 4 and 6 encompass a portion of the Grethe property, and parcel 5 encompasses a portion of the Riley property. In 86—MC—3, the property described in the ordinance is divided into eight parcels: parcels 2, 3, 4, 5 and 7 encompass a portion of the Schwake property and parcel 8 encompasses a portion of the Grethe property. In 86—MC—4, the property described in the ordinance is divided into five parcels: parcel 4 encompasses a portion of the Schwake property. The remaining parcels are not relevant for the purposes of this review. The map appended at the end of this opinion is demonstrative.

On August 11, 12 and 14, 1986, in 86—MC—3, 86—MC—2 and 86—MC—4, respectively, objectors filed their petitions to vacate each of the orders.

The following facts were adduced at the three hearings on the petitions to vacate. Jack Squardo, the president of the Village of Kildeer, testified that he met with Henry Paulus, the president of the Village of Lake Zurich, in February of 1986 to discuss rumors that Lake Zurich was planning to annex the Schwake and Grethe properties. Squardo stated that he then convened with the counsel for Kildeer to discuss Lake Zurich's interest in the unincorporated area, and at that meeting, they drew a rough sketch on a cocktail napkin of a possible annexation by Kildeer. He further testified that he then retained Dean R. Crouse and Associates to prepare plats of annexation of the disputed areas. Once the plats were completed, he called a special meeting of the Kildeer board of trustees for February 22, 1986. After an executive session in which they discussed Lake Zurich's interest in the Schwake property, Kildeer voted on and passed its three annexation ordinances.

Squardo also testified that it was his decision to publish notice of each hearing in the Chicago Sun-Times. He

stated that Kildeer customarily published its notices in the Frontier Enterprise and the Lake Zurich Herald, and it had never before published any notice in the Chicago Sun-Times.

Thomas Walsh, district manager of the circulation department of the Chicago Sun-Times, testified, on behalf of Kildeer, that the circulation of the Sun-Times was 55 copies per day in Kildeer and 415 copies per day in Lake Zurich.

Delmar Hosler, village administrator of Lake Zurich, testified that as part of his duties he monitored the local newspapers for legal notices. He stated that, to the best of his knowledge, Kildeer never published any notice in any of the Chicago newspapers. He further testified that, as a matter of procedure, he would inform the appropriate officials whenever he would see a relevant legal notice in one of the local newspapers.

Laurel Schreiber, the clerk of the Village of Kildeer, testified that she attended a public meeting on March 13, 1986, in Lake Zurich, at the direction of Jack Squardo. Lake Zurich officials discussed the proposed rezoning of the Schwake property. She stated that she observed the meeting, but did not inform Lake Zurich officials of the three pending ordinances.

Schreiber also testified that she attended a public meeting on June 16, 1986, in Lake Zurich, again at the direction of Jack Squardo. Lake Zurich officials conducted a hearing on the proposed annexation of the Schwake property. At the end of the meeting, she read a prepared statement advising Lake Zurich officials that Kildeer had already initiated annexation proceedings. She further stated that Squardo instructed her to refrain from answering questions or making additional comments.

Richard Piggott, an employee of the Lexington Development Company (Lexington), the contract purchaser of

the Schwake property, testified that he attended the June 16 meeting in Lake Zurich and first learned of the pending annexation ordinances at that time. He testified that he instructed another employee, Bill Rotolo, to attain copies of the ordinances.

Rotolo testified that he promptly requested all of the relevant documentation from the village clerk of Kildeer, but his request was denied. He then filed a Freedom of Information request, and on June 30, 1986, Kildeer produced copies of the ordinances and the minutes from the appropriate meetings. Kildeer did not produce copies of the plats of annexation. Rotolo stated that, as a result, he went to the courthouse to get copies of the plats of annexation, but Kildeer had not filed any plats with the court.

Robert Schwake, one of the property owners affected by the annexation, testified that he first learned of the ordinances on July 5, 1986, when an official from Lexington notified him. He stated that he met with his attorney and certain officials from Lexington to discuss how to prevent Kildeer from completing its annexation.

James Blackledge, a land surveyor, testified that Lexington retained him in the middle of July to prepare a map of the three ordinances. With respect to 86—MC—2, Blackledge concluded that parcels 2 and 3 embrace 8.88 acres of the Schwake property, parcels 4 and 6 embrace approximately 20 acres of the Grethe property and parcel 5 embraces 6.8 acres of the Riley property. With respect to 86—MC—3, he concluded that parcels 2, 3, 4, 5 and 7 embrace 11.56 acres of the Schwake property and parcel 8 embraces 3.08 acres of the Grethe property. With respect to 86—MC—4, he concluded that parcel 4 embraces 9.95 acres of the Schwake property. Blackledge stated that he completed his work in August of 1986.

According to the plat of annexation prepared by Dean R. Crouse and Associates, which was submitted into evidence by objectors, parcels 2, 3, 4, 5 and 7 in 86—MC—3 only embrace 9.41 acres of the Schwake property.

Jack Squardo testified that the reason Kildeer's annexation was divided into three separate ordinances was to allow the electors in each area the opportunity to vote on the respective ordinances. However, he also stated that the purpose for dividing the annexation into three ordinances was because "it would be illegal to do that in one ordinance."

Robert Schwake, Herbert Grethe and Albert Riley, the property owners affected by the annexation, testified that they did not consent to the annexation.

## I

The first issue Kildeer raises is whether relief under section 2—1401 is even applicable to a final order approving an annexation ordinance under section 7—1—4 of the Municipal Code. Kildeer contends that post-judgment relief under section 2—1401 is unavailable to objectors. In response, objectors argue that post-judgment relief under section 2—1401 is the appropriate method to challenge a final order approving an annexation ordinance. We agree with objectors.

Section 2—1401 is a procedural device to vacate an order or judgment. (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 220; *Ellman v. De Ruiter* (1952), 412 Ill. 285, 291.) The order or judgment must be final, and the moving party must petition to vacate the order not less than 30 days nor more than two years after the date of entry thereof. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401.) The purpose of vacating a final order is to achieve a just and fair result and to avoid unjust, unfair or unconscionable circumstances. *Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 613.

Section 1—108(b) of the Code of Civil Procedure provides that article II of the Code, which includes section 2—1401, controls matters of procedure to the extent that they are not regulated by other statutes. (Ill. Rev. Stat. 1985, ch. 110, par. 1—108; see *City of Danville v. Hartshorn* (1973), 53 Ill. 2d 399, 403.) The Municipal Code includes certain procedural rules, such as procedural requirements for filing a petition. (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—2.) However, the Municipal Code is silent on the issue of vacating a final order. Section 2—1401 therefore applies to the Municipal Code.

Kildeer asserts that section 2—1401 should not apply because it is substantive in nature and section 1—108(b) of the Code of Civil Procedure applies only to procedural matters. Kildeer does not cite any cases in support of this proposition. In fact, this court has previously characterized section 2—1401 as a procedural device to vacate a final judgment. *Smith*, 114 Ill. 2d at 220; *Ellman*, 412 Ill. at 291.

Kildeer next asserts that a section 7—1—4 order is not final. However, section 7—1—4 specifically provides that it is a final and appealable order. Ill. Rev. Stat. 1985, ch. 24, par. 7—1—4.

Kildeer also asserts that any post-judgment relief is limited to *quo warranto* relief. Indeed, the proper action for challenging a *completed* annexation is *quo warranto*. (*Edgewood Park No. 2 Homeowners Association v. Countryside Sanitary District* (1969), 42 Ill. 2d 241, 245.) However, the annexations in the instant case are not yet completed. Each circuit court judge approved the annexation ordinance pending before him and ordered a referendum. (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—6.) Subsequently, the orders were vacated, the referenda were set aside and the annexations were not completed. A section 2—1401 petition is the proper method to chal-

lenge a final order under section 7—1—4 where the annexation has not yet been completed.

Finally, Kildeer asserts that the two-year limitation period under section 2—1401 inherently conflicts with the one-year limitation period under section 7—1—46 to contest an annexation. Therefore, Kildeer contends that section 2—1401 does not apply to the Municipal Code. Kildeer is mistaken. Under section 2—1401, a party may petition to vacate a final order under section 7—1—4 *approving* an annexation ordinance. (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—4.) The moving party must file the petition within two years of the date of entry of the final order. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401.) Once the annexation is *completed*, the party has one year, pursuant to section 7—1—46 of the Municipal Code, to contest the annexation. Ill. Rev. Stat. 1985, ch. 24, par. 7—1—46.

## II

As a party may petition to vacate, pursuant to section 2—1401, a final order under section 7—1—4 of the Municipal Code, the next issue Kildeer raises is whether the circuit court properly granted the petitions to vacate. The quantum of proof necessary to sustain a section 2—1401 petition is a preponderance of the evidence. (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 221.) A reviewing court will not disturb the judgment below unless the circuit court abused its discretion. *Smith*, 114 Ill. 2d at 221.

Under section 2—1401, the moving party must set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2—1401 petition for relief. (*Smith*, 114 Ill. 2d at 220-21.) Kildeer claims that objectors failed to set forth factual allega-

tions in support of any of the three elements. Objectors argue that they did sufficiently set forth factual allegations establishing all three of the elements. We agree with objectors.

## A

First, the moving party must show the existence of a meritorious defense. (*Smith*, 114 Ill. 2d at 220-21.) Objectors argue, as their defense, that all three of the annexation ordinances violate section 7—1—2 of the Municipal Code. Kildeer asserts that the three ordinances do not violate the express provisions of the statute.

Section 7—1—2 provides in pertinent part:

"[T]he corporate authorities of any such municipality may initiate the proceedings by enacting an ordinance expressing their desire to annex such described territory; provided, *no tract of land in excess of 10 acres in area may be included in the ordinances of a municipality initiating the proceedings without the express consent of the owner* ***." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 24, par. 7—1—2.

The underlying issue is one of statutory interpretation: whether section 7—1—2 permits a municipality to carve out a parcel of land of less than 10 acres from a tract of land greater than 10 acres. (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—2.) In construing a statute, a court must ascertain and give effect to the legislative intent. (*M.I.G. Investments, Inc. v. Environmental Protection Agency* (1988), 122 Ill. 2d 392, 397; *People v. Haywood* (1987), 118 Ill. 2d 263, 270-71.) In doing so, we must look to the language of the statute (*Weingart v. Department of Labor* (1988), 122 Ill. 2d 1, 7), as well as the purposes to be attained by the law (*Canteen Corp. v. Department of Revenue* (1988), 123 Ill. 2d 95, 104).

The evidence shows that each of the three ordinances includes parcels of land of less than 10 acres carved out

of tracts of land in excess of 10 acres. First, the Schwake property totals approximately 117 acres. The ordinance in 86—MC—2 embraces 8.8 acres of that tract of land. The ordinance in 86—MC—4 embraces 9.95 acres. There is a dispute as to whether the ordinance in 86—MC—3 embraces 11.56 or 9.41 acres. For the purpose of this review, we will assume, *arguendo*, that the ordinance embraces 9.41 acres. Therefore, each ordinance includes a parcel of land of less than 10 acres carved out of a tract of 117 acres.

Likewise, the Grethe property totals approximately 60 acres. The ordinance in 86—MC—3 embraces 3.08 acres of that tract of land. The ordinance in 86—MC—2 includes two parcels of the Grethe property, each parcel embraces approximately 10 acres. It is unclear from the record whether objectors adequately proved that the two parcels fall under one common ownership. Nevertheless, in its brief, Kildeer admits that each parcel totals approximately 10 acres, and each is carved out of a tract of land in excess of 10 acres.

Finally, the Riley property totals approximately 12 acres. The ordinance in 86—MC—2 embraces 6.8 acres of that tract of land.

Kildeer contends that each ordinance includes *separate tracts* of land of less than 10 acres, and therefore argues that the ordinances are in compliance with the 10-acre limitation. We find Kildeer's contention to be untenable.

Under section 7—1—2 a municipality may commence its annexation proceedings by enacting appropriate ordinances. However, the municipality may not include a "*tract* of land in excess of 10 acres *** in the *ordinances*." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—2.) The legislature specifically used the singular form of the word "tract" and the plural form of the word "ordinance." Therefore, the legislature clearly in-

tended that a municipality may not annex a tract of land which exceeds 10 acres, no matter how many ordinances it adopts to annex that tract of land. The location and the boundaries of the tract which the municipality seeks to annex must be determined by a source independent of the annexation ordinance itself. The ordinance can only attempt to annex an already existing tract of land. The ordinance does not *create* a tract of land.

Furthermore, serious practical difficulties would result if a municipality were allowed to annex less than 10 acres out of a tract greater than 10 acres. For example, a municipality may annex 9 acres out of a tract of 18 acres. In the future, the same municipality may annex the remaining 9 acres. Each ordinance, on its own, would conform to the technical requirements of the statute as interpreted by Kildeer, but the net effect of the two ordinances would violate the express terms of the statute. This piecemeal method of annexation indirectly violates the 10-acre limitation. It is axiomatic that a party cannot circumvent the purpose of the statute by doing indirectly what he cannot do directly. *Hopkins v. Powers* (1986), 113 Ill. 2d 206, 212.

In view of the above, each of the ordinances that Kildeer adopted is invalid. Section 7—1—2 prohibits a municipality from carving a parcel of less than 10 acres from a tract greater than 10 acres. Therefore, the circuit court in each of the proceedings properly exercised its discretion in holding that objectors have set forth factual allegations in support of a meritorious defense.

## B

The second element that the moving party must establish under section 2—1401 is that it exercised due diligence in presenting the meritorious defense in the original action. (*Smith*, 114 Ill. 2d at 220-21.) To do so, the party must show that it was neither negligent nor at

fault in failing to present the meritorious defense in the original action. (*Diacou v. Palos State Bank* (1976), 65 Ill. 2d 304, 310; *Esczuk v. Chicago Transit Authority* (1968), 39 Ill. 2d 464, 467.) To determine if the moving party was not negligent, or in other words, if it acted reasonably under the circumstances, we may consider all of the attendant circumstances, including the conduct of the litigants. *Smith*, 114 Ill. 2d at 222.

It is not disputed on review that Kildeer *technically* complied with the statutory notice requirement when it caused notice of each hearing to be published in the Chicago Sun-Times. (Ill. Rev. Stat. 1985, ch. 24, par. 7—1— 2.) Nevertheless, the circuit court could have found, based on the evidence in the record, that Kildeer's entire course of conduct, in addition to the actual publication of the notices, was calculated in such a manner as to prevent objectors from becoming aware of the legal notices. (See *In re Petition to Annex Certain Territory to the Village of Willowbrook* (1962), 37 Ill. App. 2d 393.) Consequently, in the context of a section 2—1401 petition, objectors can sufficiently allege facts establishing "due diligence" even though Kildeer did technically comply with the statutory notice requirement.

Although Kildeer filed all three of the petitions on February 26, 1986, it caused notice of each hearing to be published on three separate days in March. Furthermore, Jack Squardo admitted that Kildeer customarily published its notices in the local newspapers, and it had never before published any notice in the Chicago Sun-Times. Delmar Hosler testified that he monitored the local newspapers for legal notices, but he did not monitor the Chicago newspapers since Kildeer never placed legal notices in those newspapers. The evidence also shows that although the Chicago Sun-Times is a paper of general circulation, the actual circulation in Kildeer is only 55 copies per day.

Moreover, Kildeer did not file the plats of annexation with the circuit court in any of the hearings. Kildeer did not inform any of the circuit court judges of the ordinances pending before the other two judges, nor did Kildeer request that the matters be consolidated. Additionally, Squardo testified that he knew that Schwake was one of the property owners. He even admitted that he had had a conversation with Schwake several years back concerning the property. Finally, on March 13, 1986, seven days before the first of the three hearings, Laurel Schreiber attended a public meeting in Lake Zurich, at the direction of Squardo. She learned that Lake Zurich officials and the affected property owners were unaware of the pending ordinances. She did not bother to inform any Lake Zurich official of the upcoming hearings.

Despite this egregious conduct, Kildeer still contends that technical compliance with the terms of the statute is sufficient. Kildeer relies on *People ex rel. Landwer v. Village of North Barrington* (1968), 94 Ill. App. 2d 265, *cert. denied* (1969), 393 U.S. 1082, 21 L. Ed. 2d 775, 89 S. Ct. 864, which held that a municipality need only comply with the statutory notice requirement, it need not provide superior notice. The appellate court in that case followed the reasoning of *Spaulding School District No. 58 v. City of Waukegan* (1960), 18 Ill. 2d 526, 528, in which this court reaffirmed the well-established principle that it is the function of the legislature to define the annexation procedures and the role of the court to determine whether the municipality complied with those procedures.

The question raised in *Landwer* was whether the municipality complied with the statutory notice requirement. In resolving this issue, the appellate court limited its holding to whether the municipality did in fact comply with the statutory notice requirement; it did not decide whether the notice was fraudulent. *Landwer*, 94 Ill. App. 2d at 271.

In the instant case Kildeer did technically comply with the terms of the statute. Therefore, the question raised is whether Kildeer's compliance was accomplished in such a manner as to deprive objectors of the notice contemplated by the Municipal Code. As noted above, under section 2—1401 this court may consider all of the surrounding circumstances, including the conduct of the litigants and their attorneys, in determining whether the moving party established due diligence. (*Smith*, 114 Ill. 2d at 222.) The facts in the instant case indicate that Kildeer proceeded in a manner that was calculated to prevent objectors from discovering the legal notices. Kildeer's entire course of conduct, in addition to the publication of the notices, vitiated the effectiveness of the notice as to the affected property owners. Therefore, in the context of a motion to vacate under section 2—1401, we cannot say that the circuit court in each of the proceedings abused its discretion in finding that objectors were not negligent in failing to discover the legal notices. Accordingly, objectors have set forth factual allegations establishing that they exercised due diligence in presenting the defense in the original action.

## C

The third element that the moving party must establish is that it exercised due diligence in filing the section 2—1401 petition for relief. (*Smith*, 114 Ill. 2d at 221.) Here, Kildeer contends that objectors waited too long in seeking relief once they discovered the existence of the ordinances. Objectors argue that they proceeded with due diligence in filing the section 2—1401 petition.

The evidence shows that on June 16, 1986, Laurel Schreiber read a prepared statement at a public meeting in Lake Zurich informing officials that Kildeer had already initiated annexation proceedings. She did not answer any questions. Immediately thereafter, Lexington

requested copies of the ordinances from Kildeer, but the request was denied. Lexington then filed a Freedom of Information request, and in response, Kildeer produced copies of the ordinances on June 30, 1986. Kildeer did not produce copies of the plats of annexation. On July 5, 1986, Lexington informed the property owners of the pending ordinances. In the middle of July, Lexington retained a land surveyor to prepare maps of the disputed area. The survey was completed in early August. Objectors then filed their section 2—1401 petitions on August 11, 12 and 14, respectively. The section 2—1401 petitions were therefore filed reasonably soon after objectors became aware that they were affected by the ordinances. Based on these facts, the circuit court in each of the proceedings did not abuse its discretion in holding that objectors have set forth factual allegations establishing that they exercised due diligence in filing the section 2—1401 petition.

III

Finally, Kildeer has filed a motion asking this court to take judicial notice of briefs filed in an earlier and unrelated proceeding, or, in the alternative, to amend the record on appeal to include these briefs. This motion was taken with the case. We are not required to take judicial notice of briefs filed in an earlier and unrelated proceeding (Ill. Rev. Stat. 1985, ch. 110, par. 8—1002), and we find no compelling reason to do so. Furthermore, since Kildeer has not shown the record to be anything other than true, correct, and sufficient to present fully and fairly the questions involved, we are not required to amend the record on appeal. (107 Ill. 2d R. 329.) Therefore, Kildeer's motion is denied.

For the reasons set forth above, we affirm the order of the appellate court.

*Appellate court affirmed.*

APPENDIX

KEY

86—MC—2
Parcels 2, 3, 4, 5, 6

86—MC—3
Parcels 2, 3, 4, 5, 7, 8

86—MC—4
Parcel 4