*In re* PETITION FOR ANNEXATION TO THE VILLAGE OF BULL VALLEY (Steven F. Kleinhans *et al.*, Petitioners-Appellees, v. Perry G. Callas, as Trustee of the Anne M. Kaiser Trust dated August 5, 2004, *et al.*, Objectors-Appellants).

Second District No. 2—08—0207

Opinion filed June 9, 2009.

Robert J. Wagner, of Robert J. Wagner, P.C., of Crystal Lake, for appellants.

Michael J. Smoron and Kevin G. Costello, both of Zukowski, Rogers, Flood & McArdle, of Crystal Lake, for appellees.

PRESIDING JUSTICE ZENOFF delivered the opinion of the court:

The objectors, Perry G. Callas and James L. Harrer, appeal in their capacities as trustees from an order of the circuit court of McHenry County dismissing their objections to petitioners' petition for annexation to the Village of Bull Valley (Village). For the reasons that follow, we affirm the judgment of the circuit court.

## BACKGROUND

On September 29, 2006, petitioners (Steven F. Kleinhans, Linda J. Kleinhans, Peter St. Clair Manson,[1] Adrienne C. Mahoney, Kamin P. Mahoney, James A. Morgan, Jean B. Morgan, May Kay Azzarello, Frances T. Azzarello, Daniel L. Adams, Joyce S. Adams, and Rebecca U. Manson) filed a petition in the circuit court of McHenry County pursuant to section 7—1—2 of the Illinois Municipal Code (Code) (65 ILCS 5/7—1—2 (West 2006)) to annex parcels of property owned by them, and two other parcels for which Callas and Harrer acted as trustees, to the Village. The parcels sought to be annexed, known as the territory, were located at Ridge Road and Valley Hill Road in unincorporated McHenry County. The objectors filed objections to the petition for annexation, asserting, *inter alia*, that the petition for an-

---

[1]Frances Carline Manson substituted as a petitioner due to Peter St. Clair Manson's disability.

nexation was an improper attempt by the Village to annex property it could not legally annex in its own name and that the petition for annexation was brought for the improper purpose of subjecting the territory to the Village's restrictive zoning in order to thwart a proposed one-acre development in the territory. At the hearing on the annexation petition, the Village took the position that the objections were not relevant. The trial court nevertheless allowed the following evidence.

Callas was the trustee of the Kaiser Trust, which owned 120 acres of farmland in the northern part of the territory (the Kaiser farm). In March 2006, he began discussions with the Village regarding voluntarily annexing the Kaiser farm to the Village if the Village would permit three-acre lot sizes on 40 buildable lots. Callas received some verbal encouragement from Village officials, so he had a sketch plan prepared and he deposited $5,000 with the Village, as required to reimburse the Village's costs associated with the sketch plan review. However, Callas had altered his concept of three-acre lots to one-acre lots with more open space. In approximately June 2006 Callas's negotiations with the Village halted when the Village ignored his requests to be placed on the zoning board's agenda, despite his having paid the $5,000 for the review. In correspondence to the Village's attorney in July 2006, Callas indicated his intention to go to the county with his plan, as the county would approve one-acre zoning. Unbeknownst to Callas, petitioners were in consultation with the Village to annex the Kaiser farm involuntarily, thus subjecting the property to five-acre zoning rather than the one-acre zoning Callas proposed. Callas did not find out about petitioners' maneuvering until he received notice of the hearing on the petition for annexation in approximately early October 2006.

Harrer was a trustee of the Mary Harrer Trust and the Joseph Harrer Trust, which owned 100 acres, 80 acres of which were a subject of the petition for annexation. The Harrer property was the family farm, and Harrer testified that he felt a sentimental attachment to it and did not want a portion of it "sucked" into the Village.

Other evidence adduced at the hearing on the objections to the petition for annexation showed the following. Nancy Jung, who lived outside the territory, signed the section 7—1—2 petition for annexation and the accompanying affidavit, which were prepared by the Village's attorney, and Emily Berendt, a lawyer and a member of the Village's plan commission, assisted Jung in getting proper signatures

on the petitions Jung circulated.[2] The Village's attorney, Michael Smoron, and Berendt also furnished Jung with deeds and voter records to review.

When Jung heard about Callas's proposed development of the Kaiser farm, she contacted the Village president, Brian J. Miller, and asked if the Kaiser farm could be involuntarily annexed to the Village. Miller directed Jung to speak with Smoron. After speaking with Smoron, Jung began recruiting people to sign petitions to annex the Kaiser farm to the Village. Eventually Jung met with all of the petitioners and showed them how they could "force" the annexation of the Kaiser farm by voluntarily annexing their own to the Village. Miller and Berendt were in attendance when Jung met with the Morgans, two of the petitioners. Jung testified that the reason she recruited petitioners was to defeat Callas's plan for the development of the Kaiser farm.

Berendt witnessed the signatures on a number of the petitions to annex the territory. She went to petitioners' various homes in order to get their signatures. Berendt spoke with Jung and Miller about the proposed development of the Kaiser farm, and she also attended meetings at the Morgans' home with other petitioners, the subject of which was the annexation of the territory to the Village. She was present when Miller explained the annexation procedure to those in attendance, and she later spoke with the Morgans regarding their ability to raise alpacas on their farm if they annexed to the Village.

Miller testified that he attended two meetings at the Morgans' home at which other persons who lived near the Kaiser farm were present. Miller explained the cost of annexing to the Village as well as answered questions about zoning. Jung had invited Miller to the meetings, and Miller at that time knew that Jung was circulating petitions, getting signatures in support of annexing to the Village, although he denied he knew any details. In addition to those meetings, Miller visited individually with some of the petitioners and answered their questions about annexation. Specifically, Miller presented the Azzarellos with the section of the Village's zoning ordinance that covered their alpacas, although Miller denied he promised the Azzarellos that their alpacas would be welcome in the Village. Miller testified that the Village was paying some of the petitioners' attorney fees in connection with the annexation and that the Village's attorneys were representing petitioners. According to Miller, the Village had always financially

[2]The petitions Jung circulated were documents on which she gathered signatures in favor of the annexation and were separate from the section 7—1—2 petition for annexation she signed, which was filed with the court on September 29, 2006.

assisted individuals who wished to annex to the Village, "so [he] didn't see anything different" about the current situation.

James A. Morgan, one of the petitioners, testified that his wife received a telephone call from Jung about annexing to the Village. Following that call, the Morgans hosted two meetings of what Morgan called the "Bull Valley group." At these meetings, Miller explained that the Village's attorneys would handle all of the "legalities," and Berendt showed the group the plan Callas proposed for developing the Kaiser farm. Morgan assumed that the Village opposed the Callas plan. Jung was also present and explained how annexing to the Village would bring the Kaiser farm into the Village as well and defeat Callas's plan. After these meetings, Berendt presented the Morgans with a petition to sign, and she suggested that they write in a caveat on the petition that would allow them to maintain their alpacas. Later, Berendt returned and asked the Morgans to sign a petition without the caveat.

The Azzarellos likewise signed a petition with the caveat relating to their alpacas, and then they signed a petition without the caveat after they received a letter from Miller stating that the alpacas were permitted under the Village ordinance.

Petitioners Adrienne Mahoney and Daniel L. Adams testified that they were concerned about the proposed development of the Kaiser farm, and petitioner Frances Carline Manson testified that she opposed it.

On December 11, 2007, the trial court issued its written decision. The trial court found, *inter alia*, that the evidence did not support the objectors' conclusion that the annexation proceedings were initiated by the Village; there was no dispute about the fact that the Village wanted the objectors' properties to be annexed; and the Village provided substantial assistance, direction, and support to petitioners. The trial court held that *In re Annexation of Certain Territory to the Village of Deer Park*, 358 Ill. App. 3d 92 (2005), was controlling.

In *Deer Park*, the appellate court held that the objection that Deer Park orchestrated the annexation to prevent the commercial development of the objectors' property was not relevant to the annexation proceedings. The appellate court coined the phrase "subterfuge defense" to describe the objection. *Deer Park*, 358 Ill. App. 3d at 99. Relying on *Deer Park*, the trial court in our case dismissed the objections and held that the petition for annexation was valid. Because the trial court in our case heard all of the evidence relating to the merits of the objections, it also made the following ruling on the merits:

> "While the [o]bjectors may not like the process by which the [p]etitioners with substantial assistance, encouragement and sup-

port of the Village of Bull Valley have been able to seek annexation of their properties consisting of a total of approximately twenty-eight acres along with the [o]bjectors' properties which total about two hundred acres to the Village of Bull Valley, the process used in this case is authorized by existing statutes and the case law."

The objectors filed a motion to reconsider, which was denied on February 28, 2008. Also on February 28, 2008, the trial court entered a final order directing the Village to submit the question of annexation to the corporate authorities of the Village for final action. This timely appeal followed. (Although the notice of appeal references other orders, the objectors' brief addresses only the orders of December 11, 2007, and February 28, 2008.)

## ANALYSIS

The issues we must decide in this appeal are (1) whether, under section 7—1—3 of the Code (65 ILCS 5/7—1—3 (West 2006)), the Village's involvement may be raised as an objection to an annexation petition and (2) if so, whether the Village's involvement can prevent an otherwise valid annexation.

The objectors recognize that the Village did not in its own name seek to annex the territory, but they contend that the Village in fact initiated and controlled the annexation proceedings in order to circumvent the statutory provision (65 ILCS 5/7—1—2(a) (West 2006)) that prohibits a municipality from seeking to annex more than 10 acres without the owner's express consent. The objectors maintain that the Village used Jung as a "shill" to recruit petitioners for the inappropriate purpose of defeating Callas's proposed one-acre development of the Kaiser farm. The objectors further argue that the petition violates the Code because it is the result of an improper preannexation agreement between the Village and petitioners. We must first determine whether these objections may properly be raised under the Code. We review issues of statutory construction *de novo*. *Hall v. Henn*, 208 Ill. 2d 325, 330 (2003).

■ Section 7—1—3 of the Code provides that, after the filing of the annexation petition but not less than five days prior to the date fixed for the hearing on the petition, any interested person may file with the circuit clerk his objections to the petition. 65 ILCS 5/7—1—3 (West 2006). This section sets forth four bases for the objections: (1) that the territory described in the petition is not contiguous to the annexing municipality; (2) that the petition is not signed by the requisite number of electors or property owners of record; (3) that the description of the territory contained in the petition is inadequate; and (4) that the objector's land is located on the perimeter of the territory, that he does not desire annexation, and that the exclusion of his land will not destroy contiguity. 65 ILCS 5/7—1—3 (West 2006).

■ Section 7—1—4 of the Code prescribes four situations under which the trial court must dismiss the petition requesting annexation: (1) the petition is not signed by the requisite number of electors or property owners of record; or (2) the described property is not contiguous to the annexing municipality; or (3) the description is materially defective; or (4) the petition is otherwise invalid. 65 ILCS 5/7—1—4 (West 2006).

Section 7—1—3, which enumerates the objections, does not include an objection that the petition is "otherwise invalid." However, to the extent there is any ambiguity between sections 7—1—3 and 7—1—4 as to what types of matters may be raised in an objection to a petition for annexation, the ambiguity is resolved by the decision in *City of East St. Louis v. Touchette*, 14 Ill. 2d 243 (1958), in which our supreme court construed the Code to contemplate the filing of objections to the petition "for any matter going to the validity thereof ***, as well as for the four specific objections set forth in section [7—1—3]." *Touchette*, 14 Ill. 2d at 248. Thus, under *Touchette*, an objector may file objections not only on those grounds enumerated in section 7—1—3, which go to the sufficiency of the petition, but also for any other matter going to the validity of the petition.

■ In reviewing the procedure to be followed for accomplishing an annexation, the court in *Touchette* made a distinction between a petition that is "sufficient" and a petition that is "valid." Indeed, our supreme court treated validity as a further requirement for a petition that is otherwise sufficient under section 7—1—3: "The legislature clearly intended that if the property owners and electors of an unincorporated territory file a sufficient petition for annexation to a municipality, *and it is found to be valid*, the matter should be submitted to the corporate authorities of the annexing municipality ***." (Emphasis added.) *Touchette*, 14 Ill. 2d at 250. We likewise use the terms "sufficiency" and "validity" of a petition for annexation to describe two different things: a petition that meets the requirements of section 7—1—3 (a sufficient petition) and a petition that is otherwise valid.

That term—"validity of the petition"—has a wider scope than might first be apparent. In *Touchette*, the objectors appealed the trial court's rejection of their objections, principal among them the objection that a portion of the territory that the city of East St. Louis sought to annex had been incorporated into the city of Centreville and annexation would destroy the contiguity of the city of Centreville. *Touchette*, 14 Ill. 2d at 248-49. Our supreme court agreed with the objectors and held that the petition for annexation could not go forward. In so holding, the court used the term "valid" to encompass

not only the petition for annexation, but also the annexation itself; the objection that annexation would carve a slice out of the city of Centreville went to the validity of the annexation and not merely to the sufficiency of the petition under section 7—1—3. The record also established that East St. Louis failed to publish notice of the hearing on annexation and that the question of annexation was never submitted to the electors of the territory to be annexed, so that "no valid annexation of the territory in question had been accomplished." *Touchette*, 14 Ill. 2d at 250. The court then enumerated the other objections filed by the objectors, which included, *inter alia*, that the territory to be annexed was in excess of 10 acres. *Touchette*, 14 Ill. 2d at 251. The court concluded that all of the objections, singly and together, "compel the conclusion that the municipal authorities *** have deliberately attempted to ignore, evade, avoid or supersede the clear, unambiguous conditions precedent and requirements for a valid annexation of the territory." *Touchette*, 14 Ill. 2d at 251.

▮ Therefore, pursuant to *Touchette*, a party objecting to a petition for annexation may object for the reasons listed in section 7—1—3, which go to the sufficiency of the petition, as well as for any reason that undermines the validity of the proposed annexation (and thus the validity of the petition).

Again, here, the objectors argue that, by submitting the petition for annexation, the Village through petitioners attempted to circumvent section 7—1—2 of the Code, which prohibits municipalities from including a tract of land in excess of 10 acres in ordinances initiating annexation proceedings. The objectors further argue that the annexation petition must be declared invalid because it is the result of an improper oral preannexation agreement. Because these objections challenge the validity of the petition, we conclude that they were objections that the objectors could properly raise in the annexation proceeding.

We are aware that the First District reached the opposite conclusion in *Deer Park* when it held that the issue of Deer Park's involvement was not relevant in the annexation proceeding. However, we think that *Deer Park*, which declined to follow *Touchette* because the facts in *Touchette* were distinguishable from those in *Deer Park* (see *Deer Park*, 358 Ill. App. 3d at 99), bypassed our supreme court's unqualified statement in *Touchette* that petitions for annexation may face objections filed "for any matter going to the validity thereof ***, as well as for the four specific objections set forth in section [7—1—3]." *Touchette*, 14 Ill. 2d at 248. Because we view the principles articulated in *Touchette* as controlling even if its facts are distinguishable, we follow *Touchette* and not *Deer Park*.

Having determined that the objectors' objections could properly be raised, we now must determine whether the trial court was correct that the objections were without merit. In pressing their argument on appeal, the objectors raise only one challenge to the trial court's findings of fact: they contend that the trial court's finding that the Village did not initiate the annexation proceedings is against the manifest weight of the evidence. See *Franz v. Calaco Development Corp.*, 352 Ill. App. 3d 1129, 1139 (2004) (questions of fact receive manifest-weight review). According to the objectors, the physical act of filing the petition with the circuit clerk is what initiates the proceedings and that was done by the Village's attorney and not petitioners. The objectors cite *In re Petition to Annex Certain Property to the City of Wood Dale*, 244 Ill. App. 3d 820 (1993), which in the context of deciding the priority of competing petitions said that a section 7—1—2 annexation is "initiated" by filing the petition in the circuit court. *Wood Dale*, 244 Ill. App. 3d at 827. However, whatever the legal significance of the term "initiate," the context of the trial court's ruling here makes clear that it did not intend the word to indicate that the Village's attorney did not physically submit the petition, but rather that the annexation process was commenced by a petition that petitioners signed instead of by a Village ordinance. There is no dispute regarding that historical fact.

The real questions in this appeal are, did the Village by its actions in preparing, encouraging, facilitating, and filing the petition illegally circumvent the legislature's intent that a municipality be restricted to annexing only up to 10 acres without the owner's consent, and did its involvement amount to an improper oral preannexation agreement that should invalidate the petition? These issues present legal questions of statutory interpretation, which we review *de novo*. *In re Estate of Lower*, 365 Ill. App. 3d 469, 477 (2006). " 'The primary goal of statutory construction is to ascertain and give effect to the intent of the legislature, and the most reliable indication of the legislature's intent is the plain language of the statute.' " *Lower*, 365 Ill. App. 3d at 478, quoting *Pietro v. Marriott Senior Living Services, Inc.*, 348 Ill. App. 3d 541, 546 (2004). When a statute's language is clear, the language will be given effect without resort to other aids of statutory construction. *Lower*, 365 Ill. App. 3d at 478. The court must not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that the legislature did not express. *Lower*, 365 Ill. App. 3d at 478.

■ We first address the objectors' argument that the petition for annexation is invalid since it is no more than a means for the Village to circumvent the 10-acre restriction that would otherwise bar the Vil-

lage's petitioning to annex the territory at issue. Because section 7—1—2 requires owner consent before a municipality can annex more than 10 acres, the objectors contend that the legislature clearly intended to limit municipalities in their power to annex and also clearly intended to protect owners of tracts of land larger than 10 acres from involuntary annexation. The objectors further argue that the Village deprived them of their right not to consent in this case, by using petitioners as a way of circumventing the statute. The objectors cite *Krupp v. Taylor*, 20 Ill. App. 2d 282 (1959), which concerned the issue of whether the "territory" to be annexed had to be a contiguous parcel, an issue not presented by our case. However, in discussing the purpose behind the legislature's limiting a municipality's ability to involuntarily annex more than 10 acres, the court in *Krupp* stated, "[C]onsidering the whole statute, one of the aims and purposes that stands out[ ] is the plain intent that property cannot be annexed against the will of its inhabitants." *Krupp*, 20 Ill. App. 2d at 286.

We find two cases that have addressed similar arguments. In *In re Annexation of Certain Territory to the Village of Chatham, Illinois*, 245 Ill. App. 3d 786 (1993), certain objectors contended that the Village of Chatham had to be considered the *de facto* petitioner because of the assistance it gave the petitioners. The appellate court disposed of the appeal on grounds of contiguity, but it addressed the argument that Chatham was the real petitioner.

> "The evidence clearly showed that although Chatham gave the petitioners substantial help, including payment of attorney fees, petitioner Janice Logan initiated the matter by seeking help from Chatham officers. Accordingly, even if we had to decide this issue in order to decide the case, we would not treat Chatham as the petitioner." *Chatham*, 245 Ill. App. 3d at 795-96.

In *In re Petition for Submittal of the Question of Annexation to the Corporate Authorities*, 282 Ill. App. 3d 684 (1996) (hereinafter *Joliet*), the municipality did more than give assistance in annexation proceedings involving more than 10 acres. Indeed, it completed the annexation proceedings as an intervenor after the petitioners failed to move forward. In the appeal, the objector argued that, because the city could not annex except by enacting an ordinance and was restricted to annexing 10 acres or less, it could not complete the annexation on behalf of the petitioners.*Joliet*, 282 Ill. App. 3d at 690-91. The appellate court disagreed on the basis that the city's and the petitioners' interests in the annexation of the property were identical. *Joliet*, 282 Ill. App. 3d at 691.

The objectors argue that neither of the above two cases stands for the proposition that a municipal attorney may actually file an annexation petition, thus initiating the proceedings, as the Village at-

torney did here. To the extent that the holding in either *Chatham* or *Joliet* implies that a petition, signed by the appropriate surrounding landowners but facilitated and encouraged by an interested municipality, may be considered valid only if the landowners make first contact with the municipality (*Chatham*, 245 Ill. App. 3d at 795-96) or if the landowners and the municipality have identical interests (*Joliet*, 282 Ill. App. 3d at 691), we disagree. The Code prevents the Village here from annexing the subject territory by enacting an ordinance. However, we see nothing in the Code to prohibit a landowners' annexation petition, even if encouraged by a municipality that could not directly annex the subject territory, where the landowners voluntarily execute the petition. The objectors' position is based on the presumption that the true actor here was the Village and not the landowners, but there is no dispute that the landowners signed the petition knowingly and of their own volition (or that, regardless of the amount of effort put forth by the Village, the petition could not be effective if the landowners did not choose to sign it). The process that led the landowners to their knowing and voluntary decision to execute the petition has no relevance under the Code.

Our case is not like *In re Petition of the Village of Kildeer to Annex Certain Territory*, 124 Ill. 2d 533 (1988). In *Kildeer*, the village filed three separate petitions, initiated by municipal ordinances, to annex certain territories, which singly were less than 10 acres, but which together totaled more than 10 acres. *Kildeer*, 124 Ill. 2d at 538. The petitions were assigned to three different judges, each judge being unaware of the other petitions. *Kildeer*, 124 Ill. 2d at 538. Our supreme court held that a municipality cannot annex a tract of land that exceeds 10 acres, no matter how many ordinances it adopts to annex that tract of land. *Kildeer*, 124 Ill. 2d at 546-47. "This piecemeal method of annexation indirectly violates the 10-acre limitation. It is axiomatic that a party cannot circumvent the purpose of the statute by doing indirectly what he cannot do directly." *Kildeer*, 124 Ill. 2d at 547. The objectors seize upon this language and argue that the Village in our case is doing "indirectly what it cannot do directly." We disagree. While the Village in our case may have urged and prevailed upon petitioners to bring the petition for annexation, it was petitioners who did so, and some of them testified to their reasons at the hearing.

Our case is unlike *Kildeer* in another respect as well. In *Kildeer*, the village took pains to hide what it was doing from the public, so much so that it published its notices in the Chicago Sun-Times, instead of the local newspaper where it customarily published such notices, resulting in the objectors not seeing the notices. *Kildeer*, 124 Ill. 2d at

538. Our supreme court said that the village's entire course of conduct was calculated to prevent objectors from becoming aware of the notices. *Kildeer*, 124 Ill. 2d at 548. In contrast, although Callas was not immediately aware of the Village's collaboration with petitioners, because the Village left him thinking he would get a hearing, that collaboration was done transparently. Miller attended meetings with the so-called Bull Valley Group, Smoron made his office records available to Jung, and Berendt openly circulated petitions. There was no evidence that the Village intended to act on the sly in the sense that the municipality did in *Kildeer*. For these reasons, we conclude that, even though properly raised, the objectors' objection to the Village's role in facilitating the landowners' petition was not meritorious.

We must still consider whether the petition to annex must be declared invalid because it resulted from an invalid oral preannexation agreement. The objectors argue that the Village entered into an oral agreement with petitioners in which the Village agreed to pay all of petitioners' attorney fees (Jung testified she paid some of her own fees), physically initiate the proceedings by filing the petition, and allow the Morgans and the Azzarellos to maintain commercial alpaca farms in the Village upon annexation. They argue that this agreement was illegal because it was executed without notice as required by statute (see 65 ILCS 5/11—15.1—3 (West 2006)). The objectors conclude that, since the agreement was improper, the annexation itself must be void. They also assert that the Village's failure to give notice of the agreement deprived them of their only opportunity to argue to the municipality that the annexation was ill advised. Even assuming there to have been an invalid preannexation agreement, we disagree with the objectors' position.

When they argue that an invalid contract voids the subsequent annexation, the objectors overlook the fact that a preannexation agreement is binding only between the annexing municipality and the subject landowners and is separate from the annexation proceedings, which must, with or without a preannexation agreement, be conducted by the normal means under Article 7 of the Code. 65 ILCS 5/11—15.1—1 (West 2006) (after agreement is signed, the land "may be annexed to the municipality in the manner provided in Article 7"); see also 65 ILCS 5/11—15.1—1 (West 2006) (preannexation agreement may be entered into by municipality and one or more landowners); 65 ILCS 5/11—15.1—4 (West 2006) (preannexation agreement binding on successors to original landowners and municipal authorities). If the agreement is invalid, it cannot be enforced between the parties, but it would have no effect on subsequent valid annexation proceedings.

When they argue that a hearing on the contract would have been their only opportunity to challenge the reasonableness of the annexation, the objectors misread the Code. As noted, even if an annexation contract is executed, the annexation itself must still be accomplished via Article 7 of the Code. 65 ILCS 5/11—15.1—1 (West 2006). Article 7 provides that a petition must be filed and notice given (65 ILCS 5/7—1—2 (West 2006)), that a court must rule on any objections and then certify the petition (65 ILCS 5/7—1—3, 7—1—4 (West 2006)), and then that "the corporate authorities of the annexing municipality shall proceed to consider the question of the annexation of the described territory" (65 ILCS 5/7—1—5 (West 2006)). A person who wants to argue the wisdom (or lack thereof) of an annexation will have this chance regardless of whether there was an annexation contract before the petition was filed.

For the above reasons, we conclude that the objectors' objections could properly be raised under the Code, because they challenged the validity of the petition for annexation by challenging the validity of the proposed annexation. However, we conclude that the objections, even though properly raised, were without merit and thus properly dismissed.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of McHenry County.

Affirmed.

BOWMAN and O'MALLEY, JJ., concur.