702

*In re* PETITION TO FORM A NEW PARK DISTRICT, to be Known as the Riverwoods Park District (Paul R. Brunton *et al.*, Petitioners-Appellants, v. American National Bank and Trust Company of Chicago, as Trustee, *et al.*, Objectors-Appellees).

Second District   No. 2—91—1443

Opinion filed July 22, 1993.

Jack M. Siegel, Bruce Kevin Huvard, and Clara Rubinstein, all of Altheimer & Gray, of Chicago, for appellants.

John M. Sullivan, of Staehlin, Jantorni & Sullivan, Ivan P. Kane, of Mayer, Brown & Platt, Donald J. Kreger and Ruth E. Krugly, both of Schiff, Hardin & Waite, Michael Duffy and Charles J. Byrum, both of Gardner, Carton & Douglas, John H. Mays, Amy Blumenthal, and Louis D. Bernstein, all of Gould & Ratner, and Patrick A. Lucansky, Janet Northrop Petsche, and Arthur C. Thorpe, all of Klein, Thorpe & Jenkins, Ltd., all of Chicago, Murray R. Conzelman, of Conzelman, Snarski & Stepanich, of Waukegan, William G. Raysa, of Raysa & Skelton, P.C., of Oak Park, and Richard H. Levy, of Arlington Heights, for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

This action began on September 23, 1991, with the filing of a petition to form a new park district in the circuit court of Lake County. The territory to be incorporated into the new district consisted of approximately 14 square miles or 9,250 acres (Riverwoods Territory). Answers and objections were filed by owners of several properties included in the petition. Following discovery, the objectors filed a motion for summary judgment alleging that the Riverwoods Territory contained at least four parcels of property which were already part of other park districts. Specifically, Vernon Hills Park District had adopted ordinances annexing a two-acre site and a 13-acre site on June 20, 1991. The ordinances were recorded on September 10, 1991. Deerfield Park District had adopted a similar ordinance, annexing 10 acres, on August 15, 1991, and recorded it on August 22, 1991. Finally, the Buffalo Grove Park District had adopted an ordinance, annexing 16 acres, on September 16, 1991. That ordinance was not recorded until November 4, 1991. Certified copies of each of these annexation ordinances, and certification of their recording, were attached to the motion.

Also attached to the summary judgment motion were portions of the deposition testimony of Douglas Howard, the surveyor who prepared the plat and legal description included in the petition. In his deposition Howard acknowledged that the Riverwoods Territory encompassed parcels of property already included in the other park districts. The inclusion of the four parcels was also set forth in the affidavit of Brian Lounsbury, an Illinois professional land surveyor who had prepared the plat of annexation of the 16 acres previously annexed by the Buffalo Grove Park District. The objectors alleged that,

inasmuch as it included land lying within other park districts, the Riverwoods petition was invalid and should be dismissed.

The petitioners filed an answer to the motion for summary judgment as well as a motion to amend the petition by deleting the properties which had been annexed to other park districts. Petitioners argued essentially that the properties had been included inadvertently and should not be allowed to defeat the petition since they were either subject to a motion to amend or *de minimis* in nature.

The trial court found that there was no factual controversy that the territory described in the petition contained properties already included in incorporated park districts. Further finding that inclusion of those lands was not *de minimis*, the court denied petitioners' motion to amend the boundaries of the proposed park district. The court then determined that the petition was fatally defective and granted the objectors' motion for summary judgment. Petitioners timely filed this appeal.

■ Before we address the merits of this matter, we must dispose of a motion and answer. In their appellate brief petitioners noted, without discussion, an amendment to the Park District Code (Ill. Rev. Stat. 1989, ch. 105, par. 1–1 *et seq.*). Objectors, in their answering brief, argued that the amendment was applicable and that it barred any action by the trial court on the petition. In their reply brief petitioners responded that, among other things, the new law was unconstitutional. Objectors filed a motion to strike this argument or, in the alternative, for leave to file a response. Objectors alleged that petitioners challenged the constitutionality of the new statute for the first time in their reply brief, thereby violating various supreme court rules and depriving them of the right to respond to a new argument. A response to the constitutional argument was attached to objectors' motion. Petitioners filed an answer to the motion in which they expressed the belief that objectors should be able to respond to the constitutional argument and indicated they had no objection to the filing of objectors' response. Petitioners also attached to their answer a reply to objectors' argument that the amendment at issue was constitutional. We ordered the motion and answer taken with the case.

The objectors filed with their motion a fully developed argument in response to petitioners' position. Not only did petitioners not object to the filing of this responsive argument, but they affirmatively indicated that filing should be allowed. Furthermore, petitioners filed a full reply to the objectors' argument. Under the circumstances, we think the filing of objectors' response is proper. The motion for leave

to file a response to the constitutional argument in petitioners' reply brief is allowed.

We turn now to the substantive issues. The record reflects that the trial judge granted the motion for summary judgment on the ground that the court lacked jurisdiction over the petition. The court believed it lacked jurisdiction because the petition included land lying within other park districts. While petitioners do not dispute the inclusion of four parcels previously annexed by neighboring park districts, they adamantly insist that the court did not thereby lack jurisdiction. Rather, they contend that the petition, on its face, met the requirements of the controlling statute and vested jurisdiction in the court at the time it was filed. Alternatively, petitioners contend that inclusion of the parcels was *de minimis* and not sufficient to preclude the jurisdiction of the court. We reverse and remand.

A motion for summary judgment should be granted when the pleadings, depositions, and affidavits demonstrate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c); *Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 420-21.) Inasmuch as petitioners do not contest that some of the property delineated in their petition lies within incorporated park districts, there is no genuine issue of material fact. Therefore, we need only resolve the legal issues arising from the fact that inappropriate parcels were included in the petition.

Formation of a park district is governed by provisions of the Park District Code (Ill. Rev. Stat. 1989, ch. 105, par. 1—1 *et seq.*). Section 2—2 of the Park District Code sets forth the requirements for a petition to form a new district. In pertinent part, section 2—2 provides that such a petition must be signed by not less than 100 legal voters residing within the proposed district and must "clearly define the territory intended to be embraced in such district" (Ill. Rev. Stat. 1989, ch. 105, par. 2—2). The petition here stated that it was signed by more than the requisite 100 legal voters, set forth the legal description and included a plat of survey of the territory to be incorporated, and alleged that the proposed district did not include territory contained in any currently existing park district. Objectors do not attack the sufficiency of the petition on its face. Rather, they challenge it only because, in fact, it included parcels lying within existing park districts.

■ It is true that the Code prohibits incorporation or annexation of property previously incorporated in other park districts. According to section 2—1 of the Park District Code, a territory having a popula-

tion under 500,000 and forming one connected area, "no portion of which shall be already included in an incorporated park district," may be incorporated as a park district. (Ill. Rev. Stat. 1989, ch. 105, par. 2—1.) Petitioners contend, however, that the property at issue was included inadvertently and that the trial court should have allowed them to amend the petition to exclude the four sites and bring the petition into conformity with the statute. Objectors respond that the inclusion of the improper parcels rendered the petition void *ab initio* and the court, therefore, lacked jurisdiction to consider its amendment. While we do not decide whether the motion to amend should have been granted, we opine that the trial court could and should have at least entertained the motion, rather than deny it at the outset, absent *any* consideration, on jurisdictional grounds. In essence, we believe the petition was sufficient to confer jurisdiction on the court for purposes of subsequent amendment.

The Park District Code sets forth not only the requirements for a petition to form a new park district, but also much of the procedure to be followed for a hearing and referendum on such a petition. It does not, however, provide for amendment of a petition. The petitioners nevertheless urge that the trial court could have considered their motion under the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 1—101 *et seq.*). We agree.

■ The provisions of the Park District Code control to the extent that they regulate procedure, but the Code of Civil Procedure applies as to matters not regulated by the Park District Code. Section 1—108(b) of the Code of Civil Procedure sets forth this principle as follows: "In proceedings in which the procedure is regulated by statutes other than those contained in this Act, such other statutes control to the extent to which they regulate procedure but Article II [Civil Practice] of this Act applies to matters of procedure not regulated by such other statutes." (Ill. Rev. Stat. 1989, ch. 110, par. 1—108(b).) The statute has been applied in various contexts. (See *In re Petition of the Village of Kildeer to Annex Certain Territory* (1988), 124 Ill. 2d 533, 543 (annexation by village under Municipal Code); *In re Petition to Annex Certain Property to the City of Wood Dale* (1993), 244 Ill. App. 3d 820, 833, 611 N.E.2d 606, 616 (petition to annex to city under Municipal Code); *In re Disconnection of Certain Territory from the Village of Machesney Park* (1984), 122 Ill. App. 3d 960, 969 (disconnection under Municipal Code); *Bank of Hickory Hills v. Hammann* (1982), 108 Ill. App. 3d 834, 837-38 (venue in supplementary proceedings generally regulated by supreme court rule).) The Park District

Code is not contained in the Code of Civil Procedure. Hence, section 1—108(b) applies where the park district statute is silent.

*In re Petition for Annexation of Territory in the County of Kankakee* (1961), 30 Ill. App. 2d 391, involved a petition for annexation to the Village of Bradley which included territory lying within the City of Kankakee. This court permitted amendment of the petition pursuant to the Revised Cities and Villages Act (Ill. Rev. Stat. 1957, ch. 24, par. 7—1 *et seq.*). The objectors, however, complained that the statute did not apply to the particular overlapping lands. As objectors in this case correctly point out, it was in *dicta* in *Kankakee County* that we said, even if the cities and villages statute did not apply, the Civil Practice Act would control in all matters of procedure when the special statute is silent and would permit amendment of the petition. (*Kankakee County*, 30 Ill. App. 2d at 396.) Objectors assert that the Park District Code is not silent since it provides that no portion of the land in the petition shall be in an incorporated park district. In almost the same breath, however, objectors also state that the Park District Code has no provision allowing any territory to be excluded by amendment. As we see it, this is precisely where the statute is silent. That we said it in *dicta* in *Kankakee County* makes the principle no less effective. Where matters of procedure, such as amendment, are not regulated by the special statute, the Code of Civil Procedure is applicable.

Section 2—616(a) of the Code of Civil Procedure provides: "At any time before final judgment amendments may be allowed on just and reasonable terms, *** in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought." (Ill. Rev. Stat. 1989, ch. 110, par. 2—616(a).) In addition, according to section 2—616(c): "A pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs, upon terms as to costs and continuance that may be just." (Ill. Rev. Stat. 1989, ch. 110, par 2—616(c).) In our view, absent any mechanism for or limitation on amendment in the Park District Code, the court could have considered the petitioners' motion to amend pursuant to the Code of Civil Procedure.

■ Insisting that the court lacked jurisdiction because the petition as filed was defective, the objectors take the position that we should not even reach the questions of applicability of the Code of Civil Procedure or whether the petition could be amended. Objectors rely heavily on *People ex rel. Hoyne v. Stumpf* (1916), 275 Ill. 81, for the proposition that a defective petition does not confer jurisdiction on the court, and such a

petition, therefore, cannot be amended. *Hoyne* involved a collateral attack, in the form of a *quo warranto* complaint, on a petition to form a new park district. Similar to this case, the original petition in *Hoyne* unknowingly included some territory which was contained in a petition filed two weeks earlier. The trial court had granted leave to amend the original petition by excluding the overlapping territory. The amended petition, however, had been signed only by the petitioners' attorney. The supreme court observed that the proceeding for forming a park district was purely statutory and that, if the petition lacked any of the essential requirements, it would not vest the court with jurisdiction to act. The court also noted that the statute nowhere provided for amendment of a petition. Hence, according to the *Hoyne* court, when the petitioners realized the initial petition included improper territory, the jurisdictional problem could not be corrected by amendment. Rather, the petitioners should have withdrawn the defective petition and presented another, signed by the requisite number of resident legal voters and correctly defining the territory intended to be organized into a park district, in compliance with the statutory requirements. The amended petition, signed only by the attorney, did not give the trial court jurisdiction to act.

We have no quarrel with the rules that a proceeding to form a park district is statutory and the jurisdiction of the court over such proceedings must be exercised in accordance with the statute. We are not, however, convinced by *Hoyne* that the trial court in this case lacked jurisdiction over the petition for purposes of allowing amendment. The *Hoyne* court specifically noted that the statute involved there, Hurd's Stat. 1916, page 1880, which was a predecessor of the present Park District Code, did not provide for amendment of a petition. No other provision for amendment was available, either, since the case was decided in 1916, and the general rules governing civil procedure were not yet applicable to those special statutory proceedings which set forth much, but not all, of their own procedure.

It was only with adoption of the Civil Practice Act of 1933 (Civil Practice Act or Act) that Illinois had a complete and comprehensive revision of its civil procedure. (Ill. Ann. Stat., ch. 110, History, Source & Effect of the Civil Practice Law, at XI (Smith-Hurd 1983).) The relevant section of the present Code of Civil Procedure, section 1—108, originally appeared as section 1 of the Civil Practice Act. The section initially did not expressly deal with the relationship between the Act and separate statutes which only partially prescribed a special procedure. That matter was covered to a limited extent by a supreme court rule. It was not until a 1955 revision that material from the supreme court rule was incorporated into the Act. (Ill. Ann. Stat., ch. 110, par. 1—108, Historical &

Practice Notes, at 36 (Smith-Hurd 1983).) The rules themselves were adopted by the supreme court in 1933, the same year the original Civil Practice Act was adopted. See Rules of Practice & Procedure of the Supreme Court of Illinois (355 Ill. 13).

As can be seen, in 1916, when *Hoyne* was decided, the only statute which could be invoked by the court was the statute providing for the organization of park districts. Since the court could exercise jurisdiction only in accordance with the statute, and the statute did not include any provision for amendment, amendment was not possible. The *Hoyne* court properly concluded that the original petition did not conform, and could not be made to conform, to the statute, and the trial court, therefore, had no power to act upon it. Consequently, the only remedy was to file a new petition which conformed in all respects to the statutory requirements.

In contrast to the situation in *Hoyne*, amendment of the defective petition in this case was possible. We do not dispute the principle, as shown in *Hoyne*, that the trial court cannot take any affirmative action with regard to the formation of a new park district as long as the petition for such a district does not conform to the requirements of the statute. We believe this is what the *Hoyne* court meant when it said the filing of a proper petition is jurisdictional. Accordingly, like the trial court in *Hoyne*, the court in this case could not have granted the requests set forth in the petition once the defect was discovered. This is not the same as saying the petition itself could not be amended. The petition in *Hoyne* could not be amended because there was no authority for the court to allow amendment. Here, authority for amendment is found in the Code of Civil Procedure.

The other authorities cited by objectors are no more persuasive than *Hoyne*. Like *Hoyne*, *People ex rel. Curtin v. Heizer* (1967), 36 Ill. 2d 438, arose from a complaint in *quo warranto*. The complaint challenged the formation of a fire protection district. The proposed district, as set forth in the petition, included land which was located in Missouri and, thus, beyond the jurisdiction of the court. Finding that the trial court had had no power to act affirmatively upon the petition because it was defective, the *Curtin* court remanded with directions to enter judgment of ouster. The challenge to the petition in *People ex rel. Goldsbery v. Zoller* (1929), 337 Ill. 362, was also brought in *quo warranto* questioning the formation of a drainage district. The lower court had lacked jurisdiction because notice had not been given in compliance with the statute, and the petition embraced property already annexed by another drainage district. Accordingly, the judgment of ouster was affirmed.

Neither *Curtin* nor *Goldsbery* requires the result the objectors seek here. Both of those cases sounded in *quo warranto* and involved proceedings which occurred *after* the trial court had taken affirmative action which resulted in the formation of a municipal district. Apparently, amendment had never been sought in the trial court as the issue was not discussed on appeal in either case. Furthermore, *Goldsbery*, like *Hoyne*, was decided prior to the adoption of the Civil Practice Act, and amendment would not have been possible even if it had been raised. Since the *Curtin* and *Goldsbery* petitions neither conformed initially nor were amended to conform to statutory requirements, the respective trial courts had not had power to act on them. In contrast, the trial court here had taken no action on the petition at the time petitioners moved to amend, and amendment was possible pursuant to the Code of Civil Procedure.

We find the posture of this case more similar to that of *Kankakee County*, which we discussed above, where amendment was allowed prior to a hearing on the validity of the petition and, therefore, well before the annexation was an accomplished fact. The challenges in *Goldsbery* and *Curtin* were in *quo warranto*, after the new districts were formed and operating, and it was evident the trial court had acted without jurisdiction.

*In re Petition for the Establishment of a Fire Protection District* (1968), 98 Ill. App. 2d 32, was another case where the petition included territory which had already been incorporated into an existing fire protection district. While petitioners sought to show that taxes had been neither extended against the overlapping property on behalf of the existing fire protection district, nor paid by the landowner, they did not seek amendment. Accordingly, the defective and unamended petition was not sufficient to empower the court to act. In *People ex rel. Village of Long Grove v. Village of Buffalo Grove* (1987), 160 Ill. App. 3d 455, a petition for annexation, challenged in *quo warranto*, was invalid and ineffective for purposes of priority over a competing petition because it included territory lying within another municipality. However, the petition there had been filed by landowners with the village rather than the court, and the question of its amendability never presented itself.

In sum, while we agree with the cited authorities that jurisdiction over the incorporation of a park district is conferred by the Park District Code, we reject the argument made by objectors based on those authorities. We do not believe that a petition, defective only because it mistakenly includes territory not subject to incorporation, precludes jurisdiction even for purposes of amendment. That the Park District Code does not authorize amendment is not fatal to a petition like the

one here, since the Code of Civil Procedure is meant to pick up where special statutes, like the Park District Code, leave off in terms of procedure. To decide otherwise, in our view, would be inconsistent with the intent and purposes of the Code of Civil Procedure.

The Civil Practice Act, now codified in articles I and II of the Code of Civil Procedure, is to be liberally construed "to the end that controversies may be speedily and finally determined according to the substantive rights of the parties." (Ill. Rev. Stat. 1989, ch. 110, par. 1—106.) The Civil Practice Act was designed to eliminate the formalized rules of common-law pleading and to establish procedures whereby substantive rights could be determined with a minimum of delay, technicality, and expense. (*Dorin v. Occidental Life Insurance Co.* (1971), 132 Ill. App. 2d 387, 391.) Too, the basic purpose of the Civil Practice Act is to remove barriers which prevent the trial of a case on its merits and to facilitate procedures to accomplish that goal. (*Miller v. Enslen* (1978), 60 Ill. App. 3d 865, 868; *Thomas v. Gouwens* (1975), 25 Ill. App. 3d 663, 665.) As we see it, to hold that the trial court here could not even consider the petitioners' motion to amend, solely because the petition unwittingly embraced some improper territory, would result in little other than frustration of the fundamental ends sought by the Code of Civil Procedure.

We find support for application of the Code of Civil Procedure to this case in *Graves v. Needham* (1942), 379 Ill. 25, and *Lang v. Board of Education of Community School District No. 16* (1969), 109 Ill. App. 2d 195. *Graves* involved an election contest in which the petition was amended after the 30-day time period for filing a petition had expired. The amendment involved very minor clarification changes in the affidavit verifying the statement of issues. The court acknowledged the appellant's argument that a proceeding to contest an election was wholly statutory and the jurisdiction of courts over election contests had to be exercised only in accordance with the statute. Thus, the court recognized that if the statement of issues in a petition was not sworn to, as required by the statute, the court would have no jurisdiction of the cause. The *Graves* court did not, however, hold that the initial petition, even if it was defective, failed to confer jurisdiction on the trial court. Rather, the court took note of amendments to the general election statute which indicated that (1) the statement of issues was to be verified in the same manner as complaints in other civil cases were verified and (2) the case was to be tried in like manner as other civil cases. Then the court invoked the provisions of the Civil Practice Act for verification and amendment of pleadings. After determining that the amendment at issue met the relation back requirements of the Civil Practice Act and, therefore, was not barred by the 30-day limitation of the general elec-

tion law, the *Graves* court held that the defect in the original petition, if any, had been cured by the amendment. Of its decision the court said: "To hold otherwise would render nugatory the ameliorative provisions of section 46 [amendment provision] of the Civil Practice act." *Graves*, 379 Ill. at 28.

*Lang* involved a petition contesting a school bond election. The petition was defective in that it named the wrong party as respondent and failed to make a necessary allegation. Petitioners successfully moved to amend after the statutory period for filing an election contest had expired. Respondent contended that since the contest was not brought against the proper party within the time allowed by law, and since the original petition failed to state a cause of action, the court lacked jurisdiction to allow petitioner's amendments after the time for bringing the contest had passed. The *Lang* court, however, believed the original petition was sufficient to confer jurisdiction for purposes of subsequent amendment. The court noted that the procedure for maintaining a school election contest was set forth in the Election Code (Ill. Rev. Stat. 1967, ch. 46, pars. 23 through 24) and that the Election Code controlled to the extent to which it regulated procedure. However, the Civil Practice Act applied as to matters of procedure not regulated by the Election Code. The court then applied the Civil Practice Act and found that the trial court had not abused its discretion either in allowing a substitution of respondents or in allowing the language of the petition to be amended. In support of its conclusion, the *Lang* court cited authority for the proposition that the amendment provisions of the Civil Practice Act are to be liberally construed in furtherance of justice and to the end that the merits of the controversy may be decided.

It appears that the jurisdictional argument made by the objectors in this case was also made in both *Needham* and *Lang*. In neither instance did the court find that the original, defective petition failed to confer jurisdiction on the court *ab initio*, despite the fact that a proceeding to contest an election was wholly statutory. It is true that the *Graves* court noted language in the election law implying that procedural aspects of such contests should be handled like other civil cases. We are unable to find comparable language in the Park District Code. On the other hand, the Civil Practice Act in effect in 1942, when *Graves* was decided, did not include the present-day provision for application of the Code of Civil Procedure to special statutory proceedings, to the extent the special statutes themselves do not regulate procedure. (See Ill. Rev. Stat. 1989, ch. 110, par. 1—108(b).) Like the *Needham* and *Graves* courts, we are convinced that to hold otherwise than we do would undermine the lib-

eral amendment provisions of the Code of Civil Procedure as well as the directive that the code should be liberally construed.

The conclusion we reach is particularly compelling in the circumstances of this case. The petition was filed on September 23. Vernon Hills had annexed its two overlapping parcels, consisting of a total of 15 acres, on June 20, well before the petition was filed. However, those annexations were not recorded until September 10, only 13 days before petitioners filed. Deerfield had recorded its annexation ordinance, involving 10 acres, on August 22. Buffalo Grove had annexed 16 overlapping acres on September 16, just a week before petitioners filed, but did not record the annexation until November 4, well after the petition was filed. In only one of these instances had the annexation been recorded for so much as a month prior to the filing by petitioners. Inasmuch as annexation of 16 of the approximate total of 41 acres was not recorded until after September 23, even a search of the records would not have enlightened petitioners as to that particular overlap in a timely fashion. While petitioners might have discovered the conflict involving the remaining 25 acres, as a practical matter it would have been difficult to do so.

Although Douglas Howard, petitioners' surveyor, indicated at his deposition that he was not sure exactly when it had been submitted, the plat of survey of the Riverwoods Territory is dated August 5, 1991. This date was approximately a month and a half before the petition was filed, a period of time which appears reasonable to us to allow for proper preparation of all the documents which were filed with the petition. These included, besides the plat and the petition itself, the legal description and all the sheets containing signatures of the petitioners.

Under the position taken by objectors, the only way petitioners could ever have prevailed was to verify with the county recorder, right up to the date of filing the petition, that no overlapping annexation ordinances had been recorded. Further, objectors assert that annexation is effective upon adoption of an ordinance, even without recordation of the ordinance. We do not address this issue, but, assuming for the sake of argument that objectors are correct, petitioners would have had the additional burden of insuring that none of the surrounding park districts had adopted annexation ordinances involving overlapping property. Again, assurances, as well as any necessary corrections, would be required right up to the day of filing the petition. We note also the possibility of a nearby park district adopting an annexation and deliberately not recording it for the very purpose of frustrating the attempted formation of a new park district. As we said, the practical aspects of filing a perfect petition could be prohibitive.

Moreover, even if petitioners were required to begin the whole process all over again, by filing a new petition, there would be no guarantee that the new petition would not also be defeated by yet another annexation occurring in the interim. We believe that consideration of the merits of a motion to amend provides a sounder, more reasonable approach to these problems than does outright dismissal, prior to any such consideration, on jurisdictional grounds. We also believe that such an approach is in keeping with the goal of the Code of Civil Procedure to facilitate the determination of substantive rights with a minimum of delay, technicality, and expense. (*Dorin*, 132 Ill. App. 2d at 391.) Since the court had jurisdiction over the petition, the objectors were not entitled to judgment as a matter of law, and their motion for summary judgment should have been denied.

Having said all of the above, we stress that we pass no judgment on the merits of petitioners' motion to amend. We are well aware that whether to grant leave to amend a complaint rests within the sound discretion of the trial court (*Regas v. Associated Radiologists, Ltd.* (1992), 230 Ill. App. 3d 959, 968) and, absent abuse of that discretion, the trial court's decision will not be disturbed on appeal. (*Timm v. Indian Springs Recreation Association* (1992), 226 Ill. App. 3d 760, 770.) However, as explained above, the trial court never reached the substance of petitioners' motion. At the conclusion of the hearing on the objectors' motion for summary judgment, the trial judge stated: "The inclusion of [the overlapping] pieces within the petition makes the petition fatally defective from a jurisdictional point of view, and the motion of summary judgment will be allowed." Having decided it lacked jurisdiction, the trial court properly went no further. Consequently, the court never exercised *any* discretion with regard to the petitioners' motion, and abuse of discretion is not an issue in this appeal. Upon remand, of course, the lower court will be free to exercise full discretion regarding the motion to amend.

Amendments may be allowed before final judgment "on just and reasonable terms," and a pleading may be amended to conform the pleadings to the proofs "upon terms as to costs and continuance that may be just." (Ill. Rev. Stat. 1989, ch. 110, pars. 2—616(a), (c).) It is for the trial court to examine the motion in light of the statutory requirements and fairness to both the petitioners who signed the petition as filed and the objectors. We hold only that the petition was sufficient to confer jurisdiction on the trial court to consider the propriety of amendment of that petition. Should the trial court decide amendment is not proper, and the petition therefore cannot be brought into conformity with the statute, the court would have no power to act, and the petition

would have to be dismissed. If, on the other hand, the court allows amendment, and the petition then meets the statutory requirements, the matter may proceed pursuant to the statute.

We turn now to objectors' additional assertion that the petition was invalid under a recent amendment to the Park District Code. Petitioners filed a notice of appeal on December 20, 1991. On February 5, 1992, while the appeal was pending, a new law affecting the incorporation of park districts went into effect. The new law provides that when property to be organized as a park district includes any portion of a municipality which is not in any park district, the new park district must include within its boundaries all of that municipality. (See Pub. Act 87—847, eff. February 5, 1992.) Contending that the petition embraces only portions, rather than the entirety, of municipalities which are not in any park district, objectors urge that the new law is applicable and that it defeats the petition. Petitioners respond that the new law is not made retroactive and is not applicable to this case or, alternatively, that it is unconstitutional. We decline to decide these issues.

First of all, since the new law was not in effect at the time the petition was filed, the pleadings do not adequately address the matter of the petitioners' improper inclusion of municipal territory in light of that law. This matter involves fact questions which this court cannot resolve on the basis of the record on appeal. Objectors claim that petitioners admit in their appellate brief that the petition does not satisfy the requirements of the new law. While we understand objectors' inclination to infer an admission on the part of petitioners, we find in the brief only a shadowy implication that the petition does not comply with the new law. In our view such an implication does not amount to an admission of a matter which could prove fatal to petitioners' cause.

In addition, upon remand the issue may become moot. If the trial court should deny the motion to amend, the petition will have to be dismissed since, as filed, it is not adequate to authorize the court to proceed pursuant to the statutory scheme for the creation of a new park district. On the other hand, if the trial court grants the motion, petitioners may be able to amend the petition to eliminate the alleged nonconformity with the new statute. In either case, questions regarding the applicability of the amendment to the Park District Code would be moot. All in all, we do not think it either proper or productive for this court to determine the effect of the new law at this time.

For many of the reasons just mentioned, we do not think it appropriate, either, to address the constitutional argument made by the petitioners. The resolution of uncertain factual questions and potential mootness may make it unnecessary to ever address the issue in the con-

text of this case. A reviewing court will decide constitutional questions only when it is essential to the disposition of the case. (*In re Application of the County Collector* (1989), 132 Ill. 2d 64, 73; *Werner v. Botti, Marinaccio & DeSalvo* (1990), 205 Ill. App. 3d 673, 677.) The determination of the issue raised here is not only not necessary to decide the case presently before us, but the need for its future determination as part of this case is highly speculative. In essence, the issue is not ripe for disposition and, therefore, is not justiciable at this time. *In re Estate of Hoover* (1993), 155 Ill. 2d 402, 420; *Freeman Coal Mining Corp. v. Pollution Control Board* (1974), 21 Ill. App. 3d 157, 167.

Additionally, the law strongly prefers that constitutional matters be reviewed initially at the trial court level, as reflected in the rule that questions not raised in the trial court are waived and may not be raised for the first time on appeal. (*In re Liquidations of Reserve Insurance Co.* (1988), 122 Ill. 2d 555, 568; *Roberts v. Norfolk & Western Ry. Co.* (1992), 229 Ill. App. 3d 706, 717.) Since the constitutional question here did not present itself until after the trial court proceedings, waiver is not a consideration. However, the case is being remanded, and the trial court will have an opportunity to examine the constitutional question, if appropriate. After the trial court renders a decision on the petitioners' motion to amend, the constitutional issue, if still viable, may again be raised. Since we do not need to resolve the constitutional question, we will leave initial consideration of that matter to the trial court, where it should be, if and when it comes up again.

For the reasons set forth above, that portion of the order of the circuit court of Lake County granting the objectors' motion for summary judgment is reversed. The portion of the order denying the petitioners' motion to amend is vacated, and the matter is remanded for further proceedings consistent with this opinion.

Reversed in part; vacated in part and remanded.

INGLIS, P.J., and McLAREN, J., concur.