FIFTH DIVISION
February 9, 2007

No. 1-04-0911

| | |
|---|---|
| MADISON TWO ASSOCIATES, 70 West Madison Street, BANK ONE, Bank One Plaza, REALTY LLC - THE QUAKER OATS CORPORATION, 321 North Clark Street, TH TOWER LEASING, LLC, 233 South Wacker Drive, SHORENSTEIN REALTY ADVISORS, 875 North Michigan Avenue, CITYFRONT HOTEL ASSOCIATES, LP, 301 East North Water Street, 77 WEST WACKER DRIVE, LLC, 77 West Wacker Drive, TISHMAN SPEYER PROPERTIES, 200 West Madison, PARKWAY 233 NORTH MICHIGAN, LLC, 233 North Michigan Avenue, KATO INTERNATIONAL, LLC, 151 East Wacker Drive, SHORENSTEIN REALTY SERVICE AS 1 Prudential Plaza/2 Prudential Plaza, BRE/RANDOLPH DRIVE, LLC, 200 East Randolph Drive, CNBC LEASING CORPORATION, 135 South LaSalle Street, TISHMAN SPEYER PROPERTIES, 500 West Monroe Street, URBAN SHOPPING CENTERS, INC., 900 North Michigan Avenue, URBAN SHOPPING CENTERS, INC., 875 North Michigan Avenue, EQUITY OFFICE PROPERTIES TRUST, 161 North Clark Street, EQUITY OFFICE PROPERTIES TRUST, 10 South Wacker Drive/30 South Wacker Drive, PRIME GROUP REALTY TRUST, 330 North Wabash Avenue, HILTON HOTELS CORPORATION - CHICAGO HILTON AND TOWERS, 720 South Michigan Avenue, PALMER HOUSE HILTON, 17 East Monroe Street, TST 55 EAST MONROE, LLC, 55 East Monroe Street, | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellees, | |
| v. | Honorable Alfred J. Paul, |
| MARIA PAPPAS, Treasurer and *ex officio* County Collector of Cook County, | Judge Presiding. |
| Defendant-Appellant (The City of Chicago and The Board of Education of the City of Chicago, | |
| Petitioners for Intervention-Appellants). | |

1-04-0911

JUSTICE GALLAGHER delivered the opinion of the court:

This appeal involves the issue of whether the City of Chicago (the City) and the Chicago Board of Education (the Board)(collectively, petitioners), as taxing districts, have a right to intervene in tax objection cases involving valuation disputes, as opposed to rate disputes. Petitioners contend that the disposition of such cases could result in a reduction of tax revenue that they receive and they seek intervention of right pursuant to sections 2-408(a)(2) and (a)(3) of the Code of Civil Procedure. 735 ILCS 5/2-408(a)(2), (a)(3) (West 2002). The circuit court ruled that the Property Tax Code (35 ILCS 200/1 *et seq.* (West 2002)) is a complete and comprehensive statute that enumerates all of the parties who are involved and all of their rights, and, because it does not provide for a right of intervention by taxing bodies in tax objection cases, section 2-408 of the Code of Civil Procedure did not apply. Petitioners now appeal. We reverse and remand.

BACKGROUND

On August 26, 2003, petitioners jointly filed petitions to intervene in 30 tax objection cases in which certain Cook County property owners sought refunds of property taxes for the 2001 tax year. Thirteen of those cases are now involved in this appeal.[1]

[1]Seven cases were dismissed by the circuit court and there originally were twenty-three cases involved in this appeal. After this appeal was filed, several of these cases, bearing docket numbers 02 CT 2211, 03 COTO 0330, 03 COTO 0340, 03 COTO 0342, 03 COTO 1104, 03 COTO 1453, 03 COTO 1459, 03 COTO 1479, 03 COTO 1943, and 03 COTO 1944, were

2

1-04-0911

In each case involved in this appeal, the owner of the subject property filed a response opposing intervention in the circuit court. Defendant Maria Pappas, Cook County treasurer and *ex officio*, Cook County collector (the Collector), also filed a response. The Collector did not object to intervention, provided that, pursuant to section 2-408(f) of the Code of Civil Procedure (735 ILCS 5/2-408(f) (West 2002)) and section 23-30 of the Property Tax Code (35 ILCS 200/23-30 (West 2002)), any order granting the City and the Board leave to intervene specify that the State's Attorney retained the sole authority to control the defensive aspects of the litigation and/or settle any claims.

On February 27, 2004, the circuit court entered an order denying the petitions for leave to intervene. The court also included Supreme Court Rule 304(a) language. 155 Ill. 2d. R. 304(a). On March 25, 2004, the court entered an order consolidating the cases "for purposes of appealing" the February 27, 2004, order denying the petitions to intervene. We reverse and remand.

ANALYSIS

We first address our standard of review. An order denying leave to appeal as of right is generally reviewed for a clear abuse of discretion as to timeliness, inadequacy of representation, and sufficiency of interest. See, *e.g.*, *Citicorp Savings v. First Chicago Trust Co.*, 269 Ill. App. 3d 293, 298 (1995). In the instant case, however, the trial court did not base its decision upon, nor even address, any of these factors. Rather, the trial court denied the petitions to intervene based upon its decision that the Property Tax Code (35 ILCS 200/23-30 (West 2002)) was a complete

resolved and/or dismissed.

3

and comprehensive statute that enumerates all of the parties who are involved and all of their rights. The trial court concluded that the legislature did not intend to permit taxing bodies to intervene in *specific* tax objection cases, *i.e.*, cases involving challenges to property assessments (as opposed to rate challenges), because the Property Tax Code does not expressly provide for a right of intervention by taxing bodies in specific tax objection cases. In order to determine whether the trial court applied the correct legal criteria in the exercise of its discretion, we must construe the pertinent statutes. Thus, the issue on appeal involves a question of law and our standard of review is *de novo*. See *People ex rel. Graf v. Village of Lake Bluff*, 206 Ill. 2d 541 (2003). We conclude that the circuit court's interpretation of the relevant statutes was erroneous.

Article II of the Code of Civil Procedure is known as the Civil Practice Law. 735 ILCS 5/1-101(b) (West 2002). The legislature has addressed the applicability of the Civil Practice Law in Article I of the Code of Civil Procedure, specifically in section 1-108, which provides as follows:

> "Civil Practice Law applies. (a) The provisions of Article II of this Act apply to all proceedings covered by Articles III through XIX of this Act except as otherwise provided in each of the Articles III through XIX, respectively.
>
> *(b) In proceedings in which the procedure is regulated by statutes other than those contained in this Act, such other statutes control to the extent to which they regulate procedure but Article II of this Act applies to matters of procedure not regulated by such other statutes.*" (Emphasis added.) 735 ILCS 5/1-108 (West 2002).

4

Thus, the Civil Practice Law applies to all proceedings specifically covered in the Code of Civil Procedure, *as well as* all matters of procedure not regulated by other statutes. Intervention is a matter of procedure not regulated by the Property Tax Code. Thus, in the present case, the Civil Practice Law applies to the matter of procedure, intervention, which is at issue here. See, *e.g.*, *Rodriguez v. Sheriff's Merit Comm'n*, 218 Ill. 2d 342, 354, 843 N.E.2d 379, 385 (2006) ("supreme court rules, together with article II of the Code of Civil Procedure, *i.e.*, the Civil Practice Law [citation], apply to all proceedings in the trial court, except to the extent that the procedure in a particular type of action is regulated by a statute other than the Civil Practice Law"); see also *In re Petition to Form a New Park District*, 247 Ill. App. 3d 702, 708, 617 N.E.2d 464, 468-69 (1993)(noting that "[t]he relevant section of the present Code of Civil Procedure, section 1-108, originally appeared as section 1 of the Civil Practice Act" and explaining that, since its revision in 1955, section 1-108(b) has expressly dealt with the relationship between the Civil Practice Law and separate statutes that only *partially* prescribe a special procedure).

Although the Property Tax Code addresses *some* procedural matters related to tax objection cases, it only partially prescribes procedure. For example, section 23-5 specifies that taxes must be paid in full to be deemed paid under protest. 35 ILCS 200/23-5 (West 2002). Section 23-10 sets forth a deadline by which a property owner must file a tax objection complaint. 35 ILCS 200/23-10 (West 2002). Section 23-15, sets forth additional procedural details and states as follows:

> "§ 23-15. Tax objection procedure and hearing.

1-04-0911

(a) A tax objection complaint under Section 23-10 shall be filed in the circuit court of the county in which the subject property is located. Joinder of plaintiffs shall be permitted to the same extent permitted by law in any personal action pending in the court and shall be in accordance with Section 2-404 of the Code of Civil Procedure; provided, however, that no complaint shall be filed as a class action. The complaint shall name the county collector as defendant and shall specify any objections that the plaintiff may have to the taxes in question. No appearance or answer by the county collector to the tax objection complaint, nor any further pleadings, need be filed. Amendments to the complaint may be made to the same extent which, by law, could be made in any personal action pending in the court.

(b)(1) The court, sitting without a jury, shall hear and determine all objections specified to the taxes, assessments, or levies in question. This Section shall be construed to provide a complete remedy for any claims with respect to those taxes, assessments, or levies, excepting only matters for which an exclusive remedy is provided elsewhere in this Code.

(2) The taxes, assessments, and levies that are the subject of the objection shall be presumed correct and legal, but the presumption is rebuttable. The plaintiff has the burden of proving any contested matter of fact by clear and convincing evidence.

(3) Objections to assessments shall be heard de novo by the court. The

6

court shall grant relief in the cases in which the objector meets the burden of proof under this Section and shows an assessment to be incorrect or illegal. If an objection is made claiming incorrect valuation, the court shall consider the objection without regard to the correctness of any practice, procedure, or method of valuation followed by the assessor, board of appeals, or board of review in making or reviewing the assessment, and without regard to the intent or motivation of any assessing official. The doctrine known as constructive fraud is hereby abolished for purposes of all challenges to taxes, assessments, or levies.

(c) If the court orders a refund of any part of the taxes paid, it shall also order the payment of interest as provided in Section 23-20. Appeals may be taken from final judgments as in other civil cases.*** ." 35 ILCS 200/23-15 (West 2002).

Despite these procedural sections pertaining to tax objection complaints filed in the circuit court, the Property Tax Code is silent as to intervention. Thus, the express language in section 1-108(b) controls this case because intervention by taxing districts is a "matter[] of procedure not regulated by" the Property Tax Code. 735 ILCS 5/1-108(b) (West 2002). In section 1-108(b), the legislature clearly recognized that, apart from the Code of Civil Procedure, there are other statutes, such as the Property Tax Code, that regulate procedure. But, as the legislature explicitly stated, such other statutes control only "*to the extent* which they regulate procedure." Thus, while the Property Tax Code does regulate procedure *to some extent*, it is a statute that only *partially* prescribes a special procedure and, consistent with section 1-108(b)'s express limiting

1-04-0911

language of "to the extent to which they regulate procedure," the Civil Practice Law applies to those matters of procedure, including intervention, that are not regulated by the Property Tax Code.

The objectors contend, however, that because section 23-15 expressly adopts portions of Article II of the Code of Civil Procedure related to joinder of plaintiffs and amendment of complaints, the absence of language expressly authorizing intervention should constitute a prohibition of intervention. We agree with petitioners that such an interpretation is inconsistent with the plain terms of section 1-108(b) of the Code of Civil Procedure. 735 ILCS 5/1-108 (West 2002). Moreover, as petitioners note, such an interpretation would also mean that a host of provisions in Article II of the Code of Civil Procedure that are routinely utilized in tax objection cases are also inapplicable. These provisions include, among others, the procedures governing motions to dismiss a complaint, pretrial discovery, summary judgment, extensions of time and continuances, the substitution of parties, voluntary dismissal of cases, the entry of judgment, and post-judgment motions.

This court has noted that section 1-108(b) has been applied in various contexts. See *In re Petition to Form a New Park District*, 247 Ill. App. 3d 702, 706, 617 N.E.2d 464, 467 (1993) (and cases cited therein); see also *In re Application of the County Collector for Judgement & Order of Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1985 and Prior Years*, 211 Ill. App. 3d 988, 996, 570 N.E.2d 769, 774 (1991)(allowing summary judgment procedure in a tax deed case because "[t]o the extent that the Revenue Act does not regulate matters of procedure, the Civil Practice Act applies"). Notably, the Illinois

8

1-04-0911

Supreme Court has applied section 1-108(b) where the Illinois Municipal Code (formerly Ill. Rev. Stat. 1985, ch. 24, par. 7-1-2) was silent on the issue of vacating a final order approving a village's annexation ordinance. *In re Petition of the Village of Kildeer to Annex Certain Territory*, 124 Ill. 2d 533, 543, 530 N.E.2d 491 (1988). In the instant case, pursuant to section 1-108(b), the Civil Practice Law applies, including section 2-408 dealing with intervention.

We note that our decision is consistent with *ABN Ambro Services Co. v. Naperville Park District*, 325 Ill. App. 3d 7, 10, 756 N.E.2d 445, 448 (2001).

As the *ABN Ambro* court explained:

"Objectors also contend that the intervention provision of section 2-408(a) of the Civil Code does not apply to tax objection cases. We disagree. To the extent that the Tax Code does not regulate matters of procedure, the Civil Code applies. See *People ex rel. Southfield Apartment Co. v. Jarecki*, 408 Ill. 266, 274, [96 N.E.2d 569] (1951) ('where the Revenue Act [the statute that formerly contained the relevant provisions of the Tax Code] is silent, * * * the Civil Practice Act and rules of court apply'); *In re Application of the Cook County Collector for Judgment & Order of Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1987 & Prior Years*, 271 Ill. App. 3d 12, 16, [648 N.E.2d 153] (1995) ('To the extent that the Revenue Act does not regulate matters of procedure, the Code of Civil Procedure applies'); *In re Application of Rosewell*, 236 Ill. App. 3d 165, 168-69, 603 N.E.2d 681 (1992)[(same)]. *** While the Tax Code contains a section relating to procedures

9

for and adjudication of tax objections [citation], objectors do not cite, and we have been unable to locate, any provision in the Tax Code in which intervention is regulated. Accordingly, we find that the Civil Code's intervention provision applies to proceedings under the Tax Code." *ABN Ambro Services Co. v. Naperville Park District*, 325 Ill. App. 3d 7, 10, 756 N.E.2d 445, 448 (2001).

The trial court in the instant case concluded that *ABN Ambro* was inapplicable because that case involved a tax rate objection, while the present case involves assessed valuation objections. We believe that this is a distinction without a difference. There is one Property Tax Code. We conclude that *ABN Ambro* was correctly decided and was dispositive in the instant case. Section 2-408 in Article II of the Code of Civil Procedure is applicable, and the trial court here should have construed section 2-408 to determine whether petitioners satisfied its requirements for intervention.

On appeal, petitioners now assert that this court should rule, as a matter of law, that section 2-408(a)(3) in Article II of the Code of Civil Procedure (735 ILCS 5/2-408(a)(3) (West 2002)) applies and should direct the trial court to grant petitioners leave to intervene. We decline to do so and remand this matter to the trial court with directions to hold a hearing to consider whether petitioners have satisfied the requirements for intervention under section 2-408(a)(2) or section 2-408(a)(3) in Article II of the Code of Civil Procedure.

Reversed and remanded.

TULLY, J., concurs.

O'MARA FROSSARD, J., dissents.

1-04-0911

JUSTICE O'MARA FROSSARD, dissenting:

I agree with the majority that in the instant tax assessment objection case the Code of Civil Procedure rather than the Property Tax Code regulates intervention. I respectfully disagree, however, with the majority's conclusion that the trial court's denial of the petitions to intervene must be reversed and the case remanded with directions to hold a hearing to determine whether petitioners have satisfied the intervention requirements under section 2-408(a)(2) or section 2-408(a)(3) of the Code of Civil Procedure. 735 ILCS 5/2-408(a)(2), (a)(3) (West 2002) (Civil Code). The petitions to intervene filed by petitioners fail to adequately allege a basis for intervention under either section 2-408(a)(2) or section 2-408(a)(3) of the Civil Code. The circuit court did not deny intervention based on a finding that the allegations in the petitions were insufficient. However, a reviewing court can sustain the decision of the circuit court on any grounds which are supported by the record "regardless of whether the circuit court relied on the grounds and regardless of whether the circuit court's reasoning was correct." *Bell v. Louisville & Nashville R.R. Co.*, 106 Ill. 2d 135, 148 (1985).

Sections 2-408(a)(2) and 2-408(a)(3) of the Civil Code state:

"Intervention. (a) Upon timely application anyone shall be

permitted as of right to intervene in an action: *** (2) when the

representation of the applicant's interest by existing parties is or

may be inadequate and the applicant will or may be bound by an

order or judgment in the action; or (3) when the applicant is so

situated as to be adversely affected by a distribution or other

disposition of property in the custody or subject to the control or

11

disposition of the court or a court officer."  735 ILCS 5/2-408(a)(2), (a)(3) (West 2002).

"Although it is well settled that the intervention statute is remedial and should be liberally construed [citation], the petitioner is nevertheless required to allege specific facts that demonstrate that he has a right to intervene."  *Warbucks Investments Ltd. Partnership v. Rosewell*, 241 Ill. App. 3d 814, 817 (1993).  "Allegations that are conclusory in nature and merely recite statutory language are insufficient to meet the requirements of section 2-408."  *Rosewell*, 241 Ill. App. 3d at 817.

In order to state a basis for intervention under section 2-408(a)(2), petitioners were required to allege specific facts demonstrating that the State's Attorney's representation is or may be inadequate.  The allegations included in the petitions to intervene are insufficient to meet the requirements of section 2-408(a)(2).

The petitions allege that "[t]he State's Attorney's Office devotes 17 to 18 assistant state's attorneys to its Real Estate Tax Division," and that "[o]n average, each assistant must handle over 300 specific objection cases in addition to their share of the tax appeals filed before the Property Tax Appeal Board and in addition to their other civil property tax caseload."  The petitions, however, do not state what the objection cases concern, how simple or complex those cases are, or whether they involve the same or related issues.  Without such information, petitioners' allegations regarding caseload lack specific facts that demonstrate the representation provided by the State's Attorney in the instant case is or may be inadequate.

The petitions further allege that "[t]he sheer volume of the State's Attorney's case load" combined with "the magnitude of the property tax refunds during the past two years ($382.0

million) and the magnitude of the Petitioners' interest (70% of every refunded tax dollar) leads [sic] inexorably to the conclusion that the State's Attorney's representation of the Petitioners' interest in this matter is *or may be* inadequate." (Emphasis in original.) Contrary to petitioners' allegations, the size of the State's Attorney's caseload, the magnitude of property tax refunds during the previous two years, and the magnitude of petitioners' interest do not lead "inexorably" to the conclusion that the State's Attorney's representation is or may be inadequate. First, the alleged magnitude of petitioners' financial interest in the outcome of the instant cases has no bearing on the adequacy of the State's Attorney's representation. Secondly, as previously mentioned, the size of the State's Attorney caseload alone, without allegations regarding the nature of those cases, provides an insufficient factual basis in support of the allegation that the State's Attorney's representation is or may be inadequate. Third, with respect to the amount of the refunds during the previous two years, the petitions do not allege that those receiving the refunds were not entitled to them. Nor do the petitions identify any shortcomings in the State's Attorney's representation which may have led to those refunds.

Finally, the petitions allege that "[o]n information and belief, the State's Attorney's Office lacks the financial resources to obtain appraisal reports in defense of the current assessment on all but a small percentage of tax objection complaints filed each year." The petitions, however, do not allege specific facts, such as the size of the budget of the State's Attorney's Office or the average cost of appraisal reports, to support petitioners' belief that the State's Attorney's Office lacks financial resources sufficient to obtain appraisal reports. Indeed, the fact that the Cook County tax collector was successful in the proceedings before the Board of Review giving rise to the instant tax objection cases reflects that petitioners' position regarding the assessment of the

1-04-0911

subject properties has prevailed up to this point.

In addition to failing to state a basis for intervention under section 2-408(a)(2) of the Civil Code, the petitions fail to sufficiently allege a basis for intervention under section 2-408(a)(3) of the Civil Code. Petitioners were required under section 2-408(a)(3) to allege specific facts showing that they are "so situated as to be adversely affected by a distribution or other disposition of property in the custody or subject to the control or disposition of the court." 735 ILCS 5/2-408(a)(3) (West 2002). The allegations included in the petitions to intervene are insufficient to satisfy this requirement.

The petitions allege that a portion of petitioners' revenue is generated from real estate taxes collected by the Cook County treasurer and note that refunds of property tax revenues are paid by the county treasurer from a taxing district's current collections. The petitions allege that to the extent the subject properties' assessed values are reduced, petitioners "will suffer a combined direct revenue loss of $.70 for every dollar refunded to the property owner[s]." The petitions further allege that such a loss "directly reduces the revenue that is available to the City to provide City services" and "reduces the programs and educational opportunities the Board of Education is able to offer the children of the City of Chicago." Accordingly, the petitions conclude, "[t]he petitioners are so situated as to be adversely affected by any settlement or trial of this action that calls for any reduction in the assessed value of the subject property."

If the trial court ultimately concludes that the plaintiffs' properties have been overassessed, it will have the ability to direct the collector to distribute a refund to plaintiffs, and such a refund "shall be made *** from the next funds collected after entry of the final order until full payment of the refund and interest thereon has been made." 35 ILCS 200/23-20 (West 2002).

14

However, this fact - that the trial court could potentially enter an order requiring the tax collector to use *future* funds she collects to pay a refund - does not provide a sufficient basis to demonstrate that petitioners will be "adversely affected." As plaintiffs in case Nos. 02 CT 2168, 02 CT 2180, and 02 CT 2192 point out in their response brief on appeal, "[t]axing district revenue is not derived from assessments, but from levies and the corresponding rates." See *People ex rel. Ingram v. Wasson Coal Co.*, 403 Ill. 30, 36 (1949) ("The amount of tax extended upon any assessment is not determined by the amount of the assessment, but by the demands of the local taxing authorities"). Furthermore, as plaintiffs in case Nos. 02 CT 2168, 02 CT 2180, and 02 CT 2192 observe, "the City's ability to levy additional taxes for legitimate governmental purposes is unlimited." Moreover, plaintiffs in those cases correctly observe that "[b]y providing for refund suits after the first tax has been paid and distributed, the legislature avoided remedies such as injunctions against collection, which could threaten severe disruption to taxing district revenues while the taxpayers' claims were litigated." See *Clarendon Associates v. Korzen*, 56 Ill. 2d 101, 108 (1973). Indeed, petitioners received and have had possession of their proportionate share of the taxes paid under protest by plaintiffs throughout the instant proceedings.

In their reply brief on appeal, petitioners do not dispute that taxing districts have the ability to levy additional taxes and that such levies determine the amount of revenue which they receive. Instead, petitioners respond in their reply brief that "the injury at issue here is based on the loss occasioned by the inevitable delay between the time the tax collector withholds revenue from taxing districts to pay a court-ordered tax refund and the time taxing districts can recoup that lost revenue from the subsequent tax levy or some other revenue source." Petitioners argue that plaintiffs "ignore the fact that a taxing district is 'adversely affected' by a tax refund within

1-04-0911

the meaning of section 2-408(a)(3) precisely because it is deprived of tax revenues, even if only temporarily."

As plaintiffs in case Nos. 02 CT 2168, 02 CT 2180, and 02 CT 2192 point out in their response brief, the instant appeal marks the first time that petitioners have argued that "delay" involved in waiting for additional revenue is an "adverse effect" giving them an interest in assessment objection refunds. The petitions to intervene do not identify "delay" as a factual basis demonstrating that any refunds awarded in the instant case would adversely affect them. In short, the petitions fail to allege specific facts pursuant to section 2-408(a)(3) of the Civil Code indicating how a delay in the receipt of revenue occasioned by a possible refund in the instant case would adversely affect them.

As a final matter, it should be noted that although the petitioners did not expressly seek an increase in the valuation of plaintiffs' respective properties in the prayers for relief included in their petitions for leave to intervene, petitioners did reserve the right to seek such an increase in their "Brief in Support of Joint Petition for Leave to Intervene" filed with the trial court in case No. 03 COTO 0359. In that brief petitioners state:

> "Petitioners will submit one or more appraisal reports from
>
> independent appraisers that will aid [the trial] court in establishing
>
> the market value of the property and will, in all likelihood, indicate
>
> that the Cook County Assessor has fairly, accurately and legally
>
> assessed the subject property. *Should the evidence indicate that*
>
> *the Subject Property is undervalued, Petitioners will ask this Court*
>
> *to increase the 2001 assessment above the Board of Review's final*

16

*2001 assessment*." (Emphasis added.)

Petitioners do not have a right on remand to seek an increase in the valuation of plaintiffs' respective properties. Section 23-10 of the Property Tax Code provides that "[a]n objection to an assessment for any year shall not be allowed by the court, however, if an administrative remedy was available by complaint to the board of appeals or board of review under Section 16-55 or Section 16-115, unless that remedy was exhausted prior to the filing of the tax objection complaint." 35 ILCS 200/23-10 (West 2002). Section 16-115 of the Property Tax Code, in turn, confers a right upon taxing districts to file a complaint with the Board of Review. It states that "[c]omplaints that any property is overassessed or underassessed or is exempt may be made by a taxing district that has an interest in the assessment to a board of review." 35 ILCS 200/16-115 (West 2002). In the instant case, petitioners did not file a complaint with the Board of Review seeking an increase in the assessments of plaintiffs' respective properties, and accordingly they are barred under the exhaustion doctrine codified in section 23-10 of the Property Tax Code from now asking the trial court to increase the valuation of the subject properties.

For the reasons previously discussed I would affirm the trial court's order denying petitioners' petitions to intervene. I respectfully dissent.

17